**Wade Alan NEHMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 426–85.

Court of Criminal Appeals of Texas, En Banc.

Nov. 5, 1986.

On Rehearing Dec. 17, 1986.

Michael B. Charlton, Houston, for appellant.

Danny E. Hill, Dist. Atty., Ebelardo Lopez and David Hamilton, Asst. Dist. Attys., Amarillo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was found guilty by a jury of the offense of murder. See V.T.C.A. Penal Code, § 19.02(a)(1). The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. Appellant appealed the conviction to the Fort Worth Court of Appeals, which affirmed in an unpublished opinion. *Nehman v. State*, No. 2–84–155–CR, delivered March 7, 1985. We granted appellant's petition for discretionary review to consider two issues concerning whether he had waived his request for counsel when he initiated a conversation with police officers, and whether appellant had knowingly waived counsel after one was appointed. We note that only federal law is implicated; appellant raises no issues under the Texas Constitution. We will reverse the case on the basis of appellant's second ground of review.

In order to address the merits of this case, a brief recitation of the relevant facts is necessary. We borrow liberally from the Court of Appeals' opinion. On April 22, 1982, the body of Charles Baldwin was discovered in Potter County. Amarillo Police Department Detectives Collins and Richardson removed several documents from the deceased's body, including a bill of sale for a pick-up truck. Information regarding the truck was entered into the National Crime Information Center (N.C.I.C.) computer, which handles all relevant information regarding stolen vehicles and warrants and makes that information available on a nationwide basis. Collins also entered into the computer records a request that the vehicle and all occupants be held for trace evidence in a homicide investigation in Potter County, Texas.

On May 6, 1982, Iowa State Patrol Sergeant Fritz Langen noticed a red 1977 Toyota pick-up truck bearing California plates parked in an unusual position at an Interstate rest area in Iowa. He entered the license plate number into the N.C.I.C. computer and requested a license check. He received a reply that the truck was a stolen vehicle and was wanted in Amarillo, Texas in connection with a homicide investigation. The Iowa authorities verified the information with the Amarillo Police Department, whereupon Sergeant Langen approached the truck and arrested appellant. On May 6, 1982, a warrant was issued in Potter County for appellant's arrest for the murder of Charles Baldwin.

Detectives Collins and Richardson went to Iowa in order to escort appellant back to Potter County. They arrested appellant on May 11, 1982, in Iowa and informed him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (hereinafter referred to as *Miranda*). Appellant acknowledged that he understood his rights, and Collins informed him that the warnings would be in effect until their arrival in Amarillo.

During the drive back to Texas, Collins once attempted to question appellant about the murder, but appellant stated that he did not wish to talk anymore until he could talk to a lawyer. At that point, all interrogation ceased. The next day, as the three men were traveling through Oklahoma City, another conversation took place between Collins and appellant, lasting about an hour. Appellant testified that Collins initiated this conversation, and Collins testified that appellant first began the conversation. The record contains no details of the conversation, other than that it apparently concerned the murder.[1]

Upon arrival in Amarillo, appellant and the police officers had further conversations whereupon appellant indicated that he wished to give a written statement and also

---

1. The trial court made no findings of fact or conclusions of law regarding the conversation. Such findings and conclusions would normally be necessary for an appellate court to address a Fifth Amendment issue. Cf. *McKittrick v. State*, 535 S.W.2d 873 (Tex.Cr.App.1976). We need not, however, address appellant's Fifth Amendment contention because we will reverse the case based upon appellant's Sixth Amendment claim.

volunteered to retrace his activities concerning the murder. Collins and Richardson testified that appellant agreed to give a written statement, but as it was being typed and before appellant signed it, the scheduled time for appellant's Art. 15.17 "warning hearing" arrived.

At the Art. 15.17 "warning hearing", the justice of the peace informed appellant of his *Miranda* rights and, upon appellant's request, appointed an attorney to represent appellant. The attorney was not present at the time. After Art. 15.17 "warning hearing", appellant was returned to the police department where he reviewed the typed statement and signed it. Appellant testified that he told the officers that he wanted to speak to his attorney before signing the statement, and the officers testified that he made no such request.

Before the Fort Worth Court of Appeals, appellant argued that admission of the written statement was improper since the State failed to show a valid waiver of his Fifth Amendment right to counsel during interrogation, and the securing of the written statement was in violation of his Sixth Amendment right to counsel.

As will be later developed, we need only address appellant's Sixth Amendment right contention. The United States Supreme Court recently issued an opinion concerning a similar issue. In *Michigan v. Jackson,* — U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the defendants were charged with unrelated murders. Both had requested appointment of counsel at their arraignments. Before they had an opportunity to consult with their attorneys, and after being advised of their rights under *Miranda,* the police officers questioned them and obtained statements. Both defendants were convicted over objections to the admission of the confessions into evidence. The Michigan Supreme Court considered the cases together, and held that the confessions were improperly obtained in violation of the Sixth Amendment. The United States Supreme Court granted certiorari to consider both cases in tandem.

In holding that the confessions should have been suppressed, Justice Stevens, writing for the Court, cited *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), where it was stated:

"[an accused person in custody who has] expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

*Id.* 451 U.S. at 484–5, 101 S.Ct. at 1884–5. Justice Stevens referred to *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) where the Court held that:

"*Edwards* established a bright-line rule to safeguard pre-existing rights," *id.* [465 U.S.] at 646 [104 S.Ct. at 1343] "once a suspect has invoked the right to counsel, any subsequent conversations must be initiated by him." *Id.* at 641 [104 S.Ct. at 1340].

The Court then found that:

"The Sixth Amendment guarantee of the assistance of counsel also provides the right to counsel at postarraignment interrogations. The arraignment signals 'the initiation of adversary judicial proceedings,' and thus the attachment of the Sixth Amendment, *United States v. Gouveia,* 467 U.S. 180, 187, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); thereafter, government efforts to elicit information from the accused, including interrogation represent 'critical stages' at which the Sixth Amendment applies." [footnotes omitted]

*Jackson,* 106 S.Ct. at 1407–8. In concluding that the Michigan Supreme Court had properly held that the confessions were invalid, the Supreme Court stated:

"We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the

defendant's right to counsel for that police-initiated interrogation is invalid."

*Id.* 106 S.Ct. at 1411.

In the case before this Court, appellant requested appointment of an attorney at the Art. 15.17 "warning hearing". There is no question that adversarial proceedings had been initiated, and thus, that appellant's Sixth Amendment right to counsel had attached. We must now determine whether appellant validly waived his right to counsel subsequent to the Art. 15.17 "warning hearing".

At this point, we must pause to take note of the proper posture to assume when determining whether a defendant has waived his right to counsel under federal standards. This Court "must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), cited in *Jackson,* supra, 106 S.Ct. at 1409. Thus, the State bears the burden of proof and must show that a valid waiver was obtained. As stated in *Jackson,* 106 S.Ct. 1409:

> "Doubts must be resolved in favor of protecting the constitutional claim. This settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel—we presume that the defendant requests the lawyer's services at every critical stage of the prosecution." [footnotes omitted]

With these rules in mind, we turn to the facts of the case before us. Prior to signing the confession used against him at trial, appellant invoked his right to counsel in front of the justice of the peace at Art. 15.17 "warning hearing" and in fact was appointed an attorney. After that, appellant was returned to the police department, read the statement which had been typed, and signed it. He was in custody of the arresting officers the entire time. Other than the boilerplate written waivers on the confession coupled with the routine police testimony concerning those waivers, there is no evidence either that appellant rescinded his request for counsel prior to signing the confession or that he made clear any knowing and intelligent intention to waive his right to counsel.

■ At this point, we must pause to address the fact that the form on which appellant's confession was typed contained a boilerplate waiver of rights clause, including waiver of the right to counsel, under the blanks where appellant's name and the time and date were typed. Although the statement containing the waiver of counsel was signed after Art. 15.17 "warning hearing", it does not constitute a valid waiver of right to counsel. In *Jackson,* 106 S.Ct. at 1410–11, the Supreme Court made the following statement in response to the State's claim that the defendant had executed a valid waiver by signing a postarraignment confession after again being advised of his rights:

> "In *Edwards,* however, we rejected the notion that, after a suspect's request for counsel, advice of rights and acquiescence in police-initiated questioning could establish a valid waiver. 451 U.S., at 484 [101 S.Ct., at 1884]. We find no warrant for a different view under a Sixth Amendment analysis. Indeed, our rejection of the comparable argument in *Edwards* was based, in part, on our review of earlier Sixth Amendment cases. Just as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis." [footnotes omitted]

Thus, we find that the written waiver contained in the statement introduced against appellant at trial was insufficient to constitute a valid waiver of his right to counsel.

■ Under these circumstances, we must find that the State has failed to fulfill its burden to establish a valid waiver. The facts of this case not only fail to establish waiver, but militate strongly in favor of finding that appellant invoked his right but was deprived of the opportunity to consult with an attorney. Thus, under the *Jackson*

analysis, we must conclude that the confession was obtained in violation of appellant's Sixth Amendment right to counsel.

When the Fort Worth Court of Appeals considered appellant's Sixth Amendment claim, it stated the following:

"A waiver of counsel does not have to be expressly made, but can be determined from the circumstances surrounding the taking of the confession. *Hawkins [v. State ]*, 660 S.W.2d [65] at 72 [ (Tex.Cr. App.1983) ]. Thus, the fact that there was no evidence indicating the appellant explicitly waived his right to counsel prior to signing the statement does not preclude a finding that he knowingly, intentionally and voluntarily waived that right. *See id; Williams v. State,* 566 S.W.2d 919, 923 (Tex.Crim.App.1978). We find the State has proven an intentional relinquishment or abandonment of a known right, and that the trial court did not abuse its discretion in finding

that appellant waived his right to have counsel present during questioning and prior to appellant signing his statement."

*Nehman,* supra slip op. at 11–12.

Given that the record contains no probative evidence regarding appellant's "intentional relinquishment or abandonment of a known right," nor do the circumstances support such a finding, we cannot accept the Court of Appeals' holding that the State met its burden of proof. There is no probative evidence that appellant did anything but invoke his right to counsel, and was denied the opportunity to confer with an attorney. Thus, the Court of Appeals erred in finding that appellant's Sixth Amendment rights were not violated.

 Since appellant's rights were violated, the confession should not have been admitted into evidence.[2] Thus, we must remand the case for a new trial.[3]

---

**2.** Judge W.C. Davis, in his dissenting opinion, suggests that since the police officers did not interrogate appellant after he had been appointed counsel and simply asked appellant to sign the confession, only the signature on the confession need be suppressed as obtained in violation of appellant's Sixth Amendment right. We are unable to accept this perhaps oversimplified analysis of the constitutional issue in this case.

At trial appellant's objection to the signed confession that the State sought to introduce into evidence was that it was obtained in violation of his Sixth Amendment right to counsel. Under Texas state law, Art. 38.22, V.A.C.C.P., a confession of the type obtained in this case is not admissible unless signed; so in the true sense of the word the confession was not "obtained" until appellant affixed his signature thereto. Under the same logic, the confession was not a confession until it was signed.

Moreover, since charges were filed against appellant, formal judicial proceedings had been initiated by the time of appellant's Art. 15.17 "warning hearing". *Jackson,* supra, held that the Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, and thereafter to "critical stages" where the government tries to elicit information from the accused. *Id,* 106 S.Ct. 1407–1408. Under Art. 38.22, V.A.C.C.P., a typed (as opposed to a handwritten) confession must be signed by the defendant in order to be admissible. Thus, the government must obtain the defendant's signature before the confession may be used at trial: the defendant's signature is an integral part of the confession's admissibility. The signing of

the confession, therefore, represents a critical stage at which the defendant is entitled to representation by an attorney, and may not be considered independent from the giving of the confession itself.

Also, *Jackson,* supra, was not limited to situations involving interrogation after arraignment as proposed by the dissent. The United States Supreme Court made it clear that the Sixth Amendment provides a right to counsel at every "critical stage" of the proceedings, even when there is no interrogation and no Fifth Amendment applicability. *Id.* 106 S.Ct. at 1409, fn. 5, citing *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Thus, the officers' failure to "interrogate" appellant subsequent to appointment of counsel does not render *Jackson,* supra, inapplicable.

In the case before us, suppressing the signature on the confession would render the entire confession inadmissible under Art. 38.22, supra. Thus, although the right to counsel had not attached when the factual confession was given, since the right had attached when the State requested appellant to sign it, which was a prerequisite to the confession's admissibility, the State's failure to honor appellant's request renders the entire confession inadmissible.

**3.** The State does not contend that admission of the confession in this case was harmless error. Thus, we need not determine whether admission was harmful and may simply remand the case for a new trial. See e.g., *Bush v. State,* 697 S.W.2d 397 (Tex.Cr.App.1985).

The judgments of the Court of Appeals and the trial court are reversed and the case is remanded for a new trial.

McCORMICK and WHITE, JJ, concur in the result.

W.C. DAVIS, Judge, dissenting.

The majority concludes that appellant's Sixth Amendment right to counsel was violated when police officers required appellant to sign his confession after he had requested appointed counsel during his arraignment. Because I believe the analysis to be incorrect, I dissent.

The majority relies heavily on *Michigan v. Jackson,* —— U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Jackson* when the defendants were arraigned they requested appointed counsel. After this arraignment and before being allowed to consult with their attorneys the defendants were given Miranda warnings and interrogated. The police interrogation led to confessions by both defendants. As the majority points out, the United States Supreme Court found this to be a violation of the Sixth Amendment right to counsel and agreed with the Michigan Supreme Court that the confessions should have been suppressed. In the instant case appellant had already given his statement prior to being arraigned. The police officers did not interrogate appellant after he had been appointed counsel during arraignment. All the officer did was ask appellant to sign his statement, something clearly not constitutionally required.[1] Therefore, *Jackson,* supra, which involved police interrogation after arraignment is inapplicable. Perhaps appellant's signature should not have been introduced. But, the confession itself, given prior to appellant's arraignment does not violate the Sixth Amendment which *had not* yet attached. See *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Jackson,* supra.

The majority's application of *Jackson,* supra, to the facts of the instant case dangerously enlarges the scope of the Sixth Amendment right to counsel. Heretofore, this right to counsel did not attach until formal adversarial proceedings had been initiated, i.e., formal charge, preliminary hearing or arraignment. See *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Gouveia,* 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). By holding that appellant's confession, given prior to arraignment, should have been suppressed under the Sixth Amendment the majority holds that the right to counsel guaranteed by that amendment attaches prior to formal adversarial proceedings being instituted.

To this expansion of the Sixth Amendment's right to counsel I respectfully dissent.

## OPINION ON STATE'S MOTION FOR REHEARING

MILLER, Judge.

On original submission this Court ordered this cause remanded to the trial court for a new trial. On rehearing the State urges that the cause shall be remanded to the Court of Appeals, pointing out that before that Court it had raised the doctrine of curative admissibility in connection with appellant's point of error. The Court of Appeals did not address that argument because it erroneously ruled the appellant's written confession admissible; therefore, the State contends that the case should be remanded for consideration of this issue.

The State is correct. Its motion for rehearing is granted on this ground, denied on the remaining grounds, and the cause is remanded to the Court of Appeals for consideration of the State's argument concerning the doctrine of curative admissibility. In doing so we express no opinion about the outcome of that determination before the appellate court.

It is so ordered.

---

**1.** Under Texas law appellant's signature on his confession is a prerequisite to admissibility. See Art. 38.22, § 1, V.A.C.C.P. However, as is pointed out in the majority opinion, appellant raised no state law ground of error but, instead, relied solely on the United States Constitution.