Leslie Ray MAIXNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–83–092 CR.

Court of Appeals of Texas,
Beaumont.

Opinion on Remand Aug. 24, 1988.

Troy C. Hurley, Odom & Hurley, Temple, for appellant.

Arthur C. Eads, Dist. Atty., Bell County, Belton, for appellee.

## OPINION ON REMAND

DIES, Chief Justice.

Appellant was convicted of murder and sentenced to forty-five years' confinement. This court reversed the conviction and ordered the cause remanded for a new trial. *Maixner v. State*, No. 09–83–092 CR (Tex.

App.—Beaumont Nov. 30, 1983). The Court of Criminal Appeals granted the State's petition for discretionary review and reversed this court's decision, holding that Appellant's confession on the night of his arrest was not the product of his illegal arrest. *Maixner v. State*, 753 S.W.2d 151 (Tex.Crim.App.1988). The Court of Criminal Appeals remanded the cause to this court for consideration of Appellant's remaining points of error.

■ Appellant's second point of error urges that the trial court erred in admitting Appellant's belt and testimony concerning Appellant's oral statement that it was the belt with which he strangled the victim. Appellant argues that the belt and his oral statement were inadmissible because he was not warned of his right to an examining trial when he was arraigned as required by *TEX.CODE CRIM.PROC.ANN. art. 15.17* (Vernon 1977).

The fact that an accused is not taken before a magistrate at all prior to making a statement does not vitiate a confession that is otherwise properly obtained. *Maloy v. State*, 582 S.W.2d 125, 128 (Tex.Crim.App. 1979). Even an unreasonable delay in bringing an accused before a magistrate will render a confession inadmissible only if some causal connection is shown between the delay in taking the accused before a magistrate and the statement made by the accused. *Id.* Since a total failure to arraign an accused will not vitiate a confession absent a showing of a causal link, we hold that such a causal link must be shown where an accused claims that the magistrate did not give all proper warnings during the arraignment.

■ The record reveals that Appellant had been repeatedly warned of his *Miranda* rights and had repeatedly waived these rights prior to making the incriminating oral statement. The statement was made immediately after Appellant's arraignment and in the magistrate's presence. Appellant does not challenge the voluntary nature of his statement. While Appellant's brief suggests that he might not have made the statement had he been warned of his right to an examining trial,

the record contains no evidence that the statement would not have been made had such warning been given. Furthermore, Appellant never raised the grounds asserted in this point of error at or before his trial. Where an objection at trial is not the same as the point urged on appeal, the point is not properly preserved for review. *Daniels v. State*, 600 S.W.2d 813, 816 (Tex. Crim.App.1980); *Walthall v. State*, 594 S.W.2d 74, 82 (Tex.Crim.App.1980). For all the foregoing reasons, Appellant's second point of error is overruled.

■ By his third point of error, Appellant urges that the trial court erred in admitting testimony concerning Appellant's statements to the grand jury after he had made known his desire to consult with an attorney prior to testifying before the grand jury. The record reveals the following facts. Appellant was arrested during the evening of September 9, 1980. Police had also arrested appellant's co-defendant, Gregory Hogle. Both Hogle and Appellant gave written statements to the police.

Hogle's statement indicated that he and Appellant raped Katharina Bower and that Appellant intentionally caused her death by strangling her with a belt. Hogle led police to the victim's body near Stagecoach Road in Bell County and had given police Appellant's nickname (Shorty) which ultimately led to Appellant's arrest.

Appellant's second written statement was given to police around midnight after being warned several times of his rights under *Miranda v. Arizona* and article 38.-22 of the Texas Code of Criminal Procedure. This statement reads as follows:

In addition to the statement I made at 10:48 a.m., on the 9th day of September, 1980, I want to add that Greg asked me to take off my belt and put it around her neck, while he had ahold of her hair, and he asked me to choke her with it. At which time, I got behind her and put my belt around her neck and then I crossed the belt, as tight as I could, I didn't want to. Then, I got up and left. At the time that Greg asked me to do this, I checked her heart, and she had a very faint heart

beat. Greg checked her heartbeat after I used the belt on her neck. As far as I know, that is all I know.

Police officers presented a complaint and affidavit for an arrest warrant to a magistrate. The magistrate issued an arrest warrant for Appellant. Appellant was brought before the magistrate for arraignment at approximately 3:00 a.m. on September 10, 1980.

Appellant remained in police custody and was brought before the Bell County Grand Jury sometime during the morning hours of September 10, 1980. After being advised that he was a suspect in a murder case and after being once again advised of his rights with respect to making a statement, Appellant stated that he would like to have an attorney. Appellant was advised that, in view of his request for an attorney, the grand jury would not question him. An assistant district attorney told Appellant, "Why don't you go outside and think about it and you do whatever you want to Mr. Maxiner [sic], okay? ... [W]hy don't you go ahead and get your coffee and we'll let you go in one of our offices and think about it."

Appellant was placed in one of the district attorney's offices. Some time later, Terry Clark, an assistant district attorney, went to see Appellant who was still in the office. No other person was present when Clark went to see Appellant at the request of the grand jury. Clark went to see Appellant to ask whether he wanted to invoke his rights and to offer Appellant a cigarette.

Mr. Clark testified that Appellant was upset at that time and that although Appellant was not crying, "you could tell that he was close to it." Appellant told Clark that he did not know what to do. Clark replied that it was Appellant's decision to make and that Appellant should "do whatever he felt was right after having his rights informed." Clark once again informed Appellant of his rights. Appellant then stated that he did not know what to do and that he did not understand the grand jury. Clark explained "what a grand jury was and how it fits in the criminal process."

Appellant then asked Clark who had testified before the grand jury. Clark replied that a police officer and Gregory Hogle had already testified before the grand jury.

Appellant asked Clark what Hogle had told the grand jury. Clark replied that grand jury testimony must be kept secret, but that he presumed that Hogle had said what he had told police in his prior statement. Appellant replied, "I don't think that's correct." Appellant stated that he wanted to tell his side of the story. Clark told Appellant that because he had requested an attorney, he could not allow Appellant to talk to the grand jury until he had a lawyer appointed. Appellant then stated that he wanted to talk to the grand jury "now today." Clark told Appellant he could not do so without an attorney. Appellant asked if he could "waive it or do I need to have one." Clark then told Appellant he could waive his right to an attorney, just as he had at the police station. Appellant replied, "What do I have to do?" Clark then prepared a waiver of rights form which contained the warnings required by article 38.22 of the Code of Criminal Procedure and a statement that Appellant knowingly, intelligently and voluntarily waived his rights.

Appellant signed this form and another form which stated that he wished to withdraw his request for an attorney and appear before the grand jury and talk to them about the murder. These two forms were executed at 3:00 p.m. on September 10, 1980. Appellant was then brought back before the grand jury, warned of his rights once again, and he informed the grand jury that he understood his rights, but wished to withdraw his request for an attorney and testify.

At trial, two grand jurors testified as to Appellant's grand jury testimony. Appellant's grand jury testimony was extremely incriminating. It was, in effect, a very detailed confession under examination by the State's attorney. One of the grand jurors testified that no attorney was furnished for the Appellant, nor did anyone ask him if he had an opportunity to consult

with an attorney while he was outside the grand jury's presence.

The State concedes that Appellant's right to counsel under both *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and under the 6th and 14th amendments to the United States Constitution existed at the time of his appearance before the grand jury for questioning. The State also concedes that Appellant was in police custody at the time. However, the State argues that it has met its burden of showing that Appellant voluntarily, knowingly, and intelligently waived his right to counsel, prior to testifying before the grand jury.

In deciding whether a person has made a valid waiver of his sixth amendment right to counsel, this court must indulge every reasonable presumption against waiver. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Nehman v. State,* 721 S.W.2d 319, 322 (Tex.Crim.App. 1986). As in *Nehman,* we find that the written waivers in this case are insufficient to justify interrogation of Appellant after his request for counsel where such interrogation was initiated in a very real sense by an attorney for the State. *See Nehman,* 721 S.W.2d at 322. Even if we viewed Clark's conversation as being something other than interrogation, the facts in this case militate strongly in favor of a finding that Appellant invoked his right to counsel, but was deprived of the opportunity to consult with an attorney. *Id.* The record is devoid of any effort by the State to allow Appellant access to an attorney after he expressed his desire for counsel. Thus, we must conclude that Appellant's grand jury testimony was obtained in violation of Appellant's sixth amendment right to counsel. *See Nehman,* 721 S.W.2d at 323.

■ However, it is well established that where lawfully obtained evidence of guilt is overwhelming, any constitutional error will be considered harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *see also, Green v. State,* 727 S.W. 2d 263, 267 (Tex.Crim.App.1987). In light of the fact that Appellant's written confession and oral statement concerning the murder weapon were admissible, the erroneous admission of Appellant's grand jury testimony was harmless beyond a reasonable doubt. Therefore, Appellant's third point of error is overruled.

■ In his fourth and final point of error, Appellant urges that the admission in evidence of Appellant's written statement was erroneous because the document admitted was a Xerox copy of the statement made and signed by Appellant. Officer Thorman testified that the document was an accurate reproduction of the statement made and signed by Appellant. He also testified that the original could not be found. Since the absense of the original statement was reasonably accounted for and Appellant did not dispute the accuracy of the copy, the trial court did not err in allowing the introduction of the copy in evidence. *Campbell v. State,* 480 S.W.2d 391 (Tex.Crim.App.) *cert. denied,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972). Appellant's fourth point of error is overruled, and the judgment of the trial court is affirmed.

AFFIRMED.