**Milton Lee ALFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00137–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 12, 1990.

---

Randy McDonald, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., Jose Gonzalez–Falla & Jan Krocker, Asst. Harris Co. Dist. Atty., for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

A jury convicted appellant of aggravated robbery and assessed punishment at 60 years confinement.

In his first four points of error, appellant contends the trial court erred in admitting a videotaped statement of appellant, thereby violating appellant's rights under the fifth, sixth, and fourteenth amendments to the United States Constitution, article I, sections 10 and 19 of the Texas Constitution, and articles 1.04, 1.05, 26.04, 26.05, and 38.23 of the Texas Code of Criminal Procedure.

At a pretrial hearing to determine the admissibility of the videotaped statement, the following evidence was presented: On June 23, 1988, a felony complaint of murder was filed against appellant. During the early morning hours of June 24, 1988, Houston police officers Heinle, DePriest, and Byers executed an arrest warrant for appellant. Appellant was taken to the Houston Police Department and placed in an interview room. Houston Police Sergeant J.M. Castilla interviewed appellant. Appellant was informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and appellant

said he understood his rights and was willing to talk about the incident. Castilla told appellant that appellant was a suspect and the police had filed criminal charges against him for murder. Castilla asked appellant if he wanted to talk about the incident. Appellant denied any involvement in any murder. Castilla asked appellant if he knew "Big Mike" (a man suspected of committing the murder with appellant), and appellant said that he did. Castilla terminated the interview upon realizing that appellant was not going to provide any useful information. At no time during this interview did appellant request an attorney, ask to use the phone to contact an attorney, or express any reluctance to speak with Sergeant Castilla.

Officer R.C. Garcia attempted to check appellant out of jail later that same morning at 8:00 a.m., but learned from the jailer that appellant had been taken to a "24 hour hearing" at the Harris County criminal courthouse. The court's docket sheet reflects that appellant appeared in person without counsel, the court ruled that probable cause existed for appellant's arrest, the court raised appellant's bond from $10,000 to $50,000, appellant filed a request for counsel and pauper's oath, and the court appointed Jim Stafford as counsel for appellant. The appointment was filed as part of the record at 12:00 noon, June 24, 1988.

Jan Krocker, the prosecutor, testified that she was unaware until after appellant was taken from the courtroom that an attorney had been appointed to represent appellant. Jim Stafford testified that he did not receive notice that he had been appointed to represent appellant until after 2:00 p.m. on June 24, 1988, although he believes his law firm received notice before noon. Upon being informed of the appointment, he unsuccessfully attempted to contact appellant at the Harris County jail. At approximately 12:10 p.m., someone from the jail contacted Officer Garcia and told him that appellant had returned from the Harris County criminal courthouse. Officer Garcia checked appellant out of the City of Houston jail and took him to the homicide division, where Officer Garcia sat with appellant in an interview room and advised appellant of his *Miranda* warnings. Appellant acknowledged understanding the *Miranda* warnings and agreed to give a statement regarding the murder. After a brief conversation with appellant, Garcia asked appellant if he preferred to give his statement in writing or in front of a video camera. Appellant chose to be videotaped. Garcia requested Officer J.R. Davis to set up video equipment in the interview room. Officer Davis set up the video camera and began taping appellant's statement at 12:37 p.m. At no time during the interview did appellant request to speak with an attorney. Officer Garcia testified that he was unaware of an attorney having been appointed by the court to represent appellant.

Appellant did not testify at the pretrial hearing on the videotape's admissibility. The trial court ruled appellant's videotaped statement admissible. The State's motion to supplement the record to include written findings of fact and conclusions of law was granted by this Court; however, no findings and conclusions have been filed in this Court.

In his first point of error, appellant contends the trial court committed reversible error by admitting into evidence a videotaped statement of appellant because the admission violated appellant's rights under the sixth and fourteenth amendments to the United States Constitution.

The sixth amendment provides, in part, that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for the accused's defense.

In deciding whether a confession was obtained in violation of *fifth amendment* rights against self incrimination, the United States Supreme Court has held:

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ... having expressed his desire to deal with the

police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). The United States Supreme Court later extended the *Edwards* rule to apply to a defendant whose *sixth amendment* rights have attached. *Michigan v. Jackson,* 475 U.S. 625, 626, 106 S.Ct. 1404, 1405, 89 L.Ed.2d 631 (1986) (the *Edwards* rule applied where the defendant had been formally charged with a crime, and had requested appointment of counsel at his arraignment).

The *Jackson* case is factually similar to the case at bar in many respects. One of the *Jackson* defendants was arrested on March 22, 1979, and agreed to talk with police that evening without counsel. On the morning of March 23, 1979, the defendant was arraigned. He requested that counsel be appointed for him because he was indigent. The detective in charge of the defendant's investigation was present at the arraignment. A notice of appointment was promptly mailed to a law firm, but the law firm did not receive it until March 27, 1979. In the interim, on March 26, 1979, two police officers interviewed the defendant in the county jail and obtained a confession from him. Prior to questioning, the officers properly advised the defendant of his rights under *Miranda.* Although the defendant inquired about his representation several times since the arraignment, he was not told that a law firm had been appointed to represent him. *Jackson,* 475 U.S. at 627, 106 S.Ct. at 1406.

■ The United States Supreme Court held that the right to have counsel present at postarraignment custodial interrogations is clear, and that the right has two sources—the fifth amendment right against compelled self-incrimination, and the sixth amendment right to counsel. *Jackson,* 475 U.S. at 629, 106 S.Ct. at 1407. The arraignment signals the initiation of

adversarial judicial proceedings, thus the sixth amendment right attaches. *Id.* Thereafter, government efforts to elicit information from the accused, including interrogation, represent "critical stages" at which the sixth amendment applies. *Id.* at 629–30, 106 S.Ct. at 1407–08. If police-initiated interrogation is conducted after sixth amendment rights have attached and after a defendant's assertion of his right to counsel, any waiver of the defendant's right to counsel for that police initiated interrogation is invalid. *Id.* at 636, 106 S.Ct. at 1411.

Other means whereby adversarial judicial proceedings are initiated, thus attaching sixth amendment rights, are formal charges, a preliminary hearing, an indictment, and an information. *Jackson,* 475 U.S. at 629, 106 S.Ct. at 1407. In *Nehman v. State,* the Texas Court of Criminal Appeals stated that an article 15.17 [1] "warning hearing" initiates adversarial proceedings, and thus a defendant's sixth amendment right to counsel attaches at that time. *Nehman v. State,* 721 S.W.2d 319, 322 (Tex.Crim.App.1986).

■ In the case at bar, appellant was brought before a judge for a "24-hour PIA" probable cause hearing; the judge ruled that probable cause existed, and increased appellant's bond from $10,000 to $50,000. We hold that appellant's sixth amendment rights attached at this article 15.17 hearing.

The Supreme Court has held that the sixth amendment right to counsel requires at least as much protection as the fifth amendment right to counsel at any custodial interrogation, and that a sixth amendment claim provides additional support for the application of the *Edwards* rule. *Jackson,* 475 U.S. at 632, 106 S.Ct. at 1408.

■ The State argues that appellant's written request for counsel was only a request for counsel at further proceedings before the court, and thus, the request did not apply to further dealings with police. The State cites *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 830, 93 L.Ed.2d 920

---

1. Tex.Code Crim.P.Ann. art. 15.17 (Vernon    Supp.1990).

(1987), where the defendant stated that "he would not give the police any written statements but he had no problem in talking about the incident." The Court held that the defendant's limited request for counsel only covered written statements, and an oral confession was admissible. *Id.* 107 S.Ct. at 832. The State argues that just as the defendant's request for counsel in *Connecticut* was limited to written, and not oral, confessions, appellant's request for counsel made by the pauper's oath at the article 15.17 hearing was limited to representation before the court, and did not encompass representation before police.

The *Connecticut* case is distinguishable from the case at bar in several ways. First, *Connecticut* was decided solely on fifth amendment grounds because the defendant's right to counsel under the sixth amendment had not yet attached. In the case at bar, appellant's rights under the sixth amendment attached at the article 15.17 hearing.

Second, appellant's request for counsel contained in the pauper's oath is not a limited request. The oath states:

Now comes Milton Lee Alford, defendant in the above styled and numbered cause, and respectfully petitions the Court to appoint counsel to represent him in said felony cause and would show to the Court that he is too poor to employ counsel.

The Supreme Court in *Connecticut* made it clear that it would give a broad, rather than a narrow, interpretation to a defendant's request for counsel. The language of the request for counsel in the present case in no way limits the request for counsel to in-court representation.

Finally, the Supreme Court specifically rejected the same argument in *Jackson* that the State poses here. The Court there held that because the State has the burden of establishing that the defendant validly waived his sixth amendment right to counsel, the Court will presume that the defendant requests the counsel's services at every critical stage of the prosecution. *Jackson,* 475 U.S. at 633, 106 S.Ct. at 1409. The Supreme Court expressly rejected the

State's suggestion that the defendant's request for appointment of counsel made at the defendant's arraignment should be construed to apply only to representation in formal legal proceedings. *Id.*

The State next argues that Officer Garcia, who took appellant's confession, was unaware that counsel had been appointed for appellant, and because appellant received proper warnings, knew he had been appointed counsel, and did not renew his request for counsel in the officer's presence, appellant waived his right to counsel, and, thus, the confession is admissible.

The United States Supreme Court specifically rejected this same argument in *Jackson.* The Court held:

Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of State actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court).

*Jackson,* 475 U.S. at 634, 106 S.Ct. at 1410.

In a more recent case, the Supreme Court renewed its position on an officer's ignorance that a defendant was appointed counsel:

[W]e attach no significance to the fact that the officer who conducted the second interrogation did not know that respondent had made a request for counsel. In addition to the fact that *Edwards* focuses on the state of mind of the suspect and not of the police, custodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel. In this case respondent's request had been properly memorialized in a written report but the officer who conducted the interrogation simply failed to examine that report. Whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in

the second investigation, the same need to determine whether the suspect has requested counsel exists. The police department's failure to honor that request cannot be justified by the lack of diligence of a particular officer.

*Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 2101, 100 L.Ed.2d 704 (1988).

In the case at bar, the order appointing counsel for appellant was filed with the court at 12:00 noon. Officer Garcia was notified at 12:10 p.m. that appellant had returned from the courthouse and was available for interrogation, and appellant began his videotaped confession at 12:37 p.m. Officer Garcia's ignorance of appellant's previously appointed counsel does not render the confession admissible, even though appellant did not renew his request for counsel after being informed of his rights immediately preceding the confession.

Appellant cites *Holloway v. State*, 780 S.W.2d 787 (Tex.Crim.App.1989), as being controlling in this case. In *Holloway*, the defendant was arrested in Gilmer, Texas, taken before a magistrate, and given the warnings pursuant to article 15.17. Later that same day, the defendant was transferred to a Longview County jail and again taken before a magistrate and given the same warnings. On that same day, appellant was indicted for capital murder of a police officer. Around 2:30 p.m. that day, an attorney was appointed to represent the defendant. The attorney went to the jail, met with the defendant and told him not to submit to any questioning. While at the jail, the attorney saw an investigator from the DA's office and told him he had been appointed to represent the defendant. The next day, which was Thanksgiving Day, the defendant was interviewed by two investigators from the Longview Police Department. After he was given his *Miranda* warnings, the defendant stated that he did not want an attorney and that he understood his rights. The defendant then made inculpatory statements which were used against him at trial. *Holloway*, 780 S.W.2d at 788–89.

The specific issue in *Holloway* was one which the United States Supreme Court had never addressed: Was appellant, who had been indicted and for whom counsel had been appointed without his first requesting one, capable of waiving his sixth amendment right to counsel before he submitted to questioning? The Court of Criminal Appeals stated that *Michigan v. Jackson* was inapplicable because the *Jackson* ban on police-initiated interrogation was based not on the mere existence of the sixth amendant right to counsel, but upon the accused's actual invocation of that right. *Holloway*, 780 S.W.2d at 790. In *Holloway*, the defendant did not request counsel; the court apparently appointed one on its own initiative.

The *Holloway* court, however, held that, where a relationship between an accused and his attorney is established after the sixth amendment has become applicable, the sixth amendment *precludes dissolution of that relationship in the absence of counsel.* *Holloway*, 780 S.W.2d at 795. The court reasoned:

> When we accept that the Sixth Amendment, unlike the Fifth Amendment, protects "the attorney-client relationship— 'the right to rely upon counsel as a medium between the accused and the State,'"
> ... we must conclude that the Supreme Court intended that if a suspect is in fact represented by counsel and the case progresses to the point at which the Sixth Amendment applies, the Sixth Amendment imposes requirements—including waiver standards—not demanded by *Miranda* and the Fifth Amendment. These requirements have the purpose of "preserving" the attorney-client relationship, an objective essential to Sixth Amendment concerns and of no significance to *Miranda* concerns.
>
> ....
>
> Argument that appellant validly waived his Sixth Amendment right to counsel after he was given the *Miranda* warnings belies the Supreme Court's warning that an attorney-client relationship, solidified after the client's indictment, is entitled to Sixth Amendment protection that *Miranda* warnings and

subsequent waiver by the client alone are incapable of overcoming. Only through notice to defense counsel may authorities initiate the interrogation of an indicted and represented defendant.

*Id.* at 794–95.

In the case at bar, appellant requested counsel at an article 15.17 hearing by signing a request for appointment of counsel and a pauper's oath. The court's order appointing counsel for appellant was filed at 12:00 noon, June 24, 1988. At 12:10 p.m., Officer Garcia received information that appellant had returned from the hearing and retrieved appellant from jail. At 12:37 p.m., Officer Garcia took appellant's videotaped confession. In light of the United States Supreme Court's holdings in *Michigan v. Jackson,* and the Texas Court of Criminal Appeals holdings in *Nehman* and *Holloway,* we hold that, regardless of Officer Garcia's ignorance that appellant had counsel, regardless of appellant's attorney's lack of notice that he had been appointed, regardless of appellant's failure to renew his request for counsel after being informed of his *Miranda* rights prior to confessing, appellant's waiver of counsel was not valid, and his confession is not admissible. We hold that the trial court erred in admitting the videotaped confession into evidence.

Generally, the reviewing court must examine the evidence to determine whether the error in admitting appellant's confession is harmless error. In making this determination, the court must consider the factors of the particular case, including whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the confession on material points, and the overall strength of the prosecutor's case. *Beck v. State,* 712 S.W.2d 745, 747 (Tex.Crim.App.1986). However, where the State does not contend that the admission of the confession was harmless error, the reviewing court need not determine whether admission was harmful and may simply remand the case for a new trial. *Nehman v. State,* 721 S.W.2d at 323 n. 3. In the case at bar, the State did not contend, in its brief or at oral argument, that the admission of the confession was harmless error. Further, we have examined the evidence and find that the admission of appellant's confession was harmful error.

We sustain appellant's point of error one.

In his fifth point of error, appellant contends the evidence is insufficient to support his conviction once the videotaped confession is ruled inadmissible.

Contrary to appellant's position, the reviewing court must consider all the evidence presented to the jury, whether rightly or wrongly. *Thomas v. State,* 753 S.W.2d 688, 695 (Tex.Crim.App.1988). In a case similar to the case at bar, the appellant did not maintain that all the evidence, proper and improper, was insufficient to support his conviction. Rather, the appellant tried to "bootstrap himself into an acquittal" by first arguing that his confessions were admitted erroneously, and then that the erroneously admitted evidence must be discounted in considering the sufficiency of the evidence. The Texas Court of Criminal Appeals refused to consider the sufficiency of the evidence under such circumstances, and reversed and remanded the cause for a new trial, instead of acquitting. *Roeder v. State,* 688 S.W.2d 856, 859 (Tex.Crim.App.), *cert. denied,* 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 349 (1985).

Following *Roeder,* we overrule appellant's fifth point of error.

In light of our sustaining appellant's point of error one, it is not necessary to consider the remainder of appellant's points of error.

The judgment is reversed and remanded.