Affirmed and Opinion filed April 13, 2006









Affirmed
and Opinion filed April 13, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-01117-CR

____________

 

MARCO ANTONIO
GARCIA,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 405th
District Court

Galveston County, Texas

Trial Court Cause No. 03CR0082

 



 

O P I N I O N

Appellant, Marco Antonio Garcia, appeals
from his conviction for the murder of Earl Bland.  After the trial court denied appellant=s motion to
suppress his multiple confessions, a jury convicted him of murder, and the trial
court sentenced him to forty years=
imprisonment.  In a single issue,
appellant contends that the trial court erred in denying the motion to
suppress.  We affirm.

Background








Appellant filed a motion to suppress
statements that he gave to police officers. 
The trial court held an evidentiary hearing on appellant=s motion.  At the hearing, Detective Joe Stanton and
Sergeant Brian Goetschius of the Texas City Police Department testified.  They stated that on December 14, 2002, Earl
Bland was stabbed to death in his home in Texas City.  The officers developed appellant as a suspect
in the crime and discovered that he had an outstanding arrest warrant for a
parole violation.  The officers located
appellant in Harris County, where local law enforcement officers arrested him
at 5:30 p.m. on January 13, 2003.  The
Texas City officers took him into custody and returned him to the Texas City
jail.  He was arrested on the parole
violation warrant, and no warrant had yet issued relating to the murder
investigation.  Appellant was calm and
cooperative, and the officers provided him with a meal and something to drink.  They offered to let him use a telephone, but
he declined the offer.  That evening,
appellant signed three separate waivers of his Miranda rights after the
officers explained those rights to him.

In association with the waivers, appellant
also signed three statements in which he confessed to stabbing Bland to death
and stealing electrical equipment from Bland=s house.  In the statements, appellant further explained that he had
needed a place to stay, and some mutual friends introduced him to Bland.  After the group used drugs together, the
friends left appellant at Bland=s house.  Appellant
said that Bland propositioned him, but appellant declined the sexual
advances.  Appellant said that he then
went to sleep but was later awakened by Bland attempting to perform a sexual
act upon him.  Appellant went to the
kitchen, retrieved a steak knife, and stabbed Bland to death.  He also identified a pair of shoes that he
was wearing at the time he stabbed Bland, and he said that he cut his thumb
during the encounter.  The officers
testified that appellant appeared to understand his rights as explained to him
by the officers, appellant freely and voluntarily waived his right to counsel,
and at no point during that first evening did appellant request counsel.








The next morning, January 14, 2003,
appellant was taken before a magistrate at 8:20 a.m.  Sergeant Goetschius testified that it was
normal procedure to take someone before a magistrate the following morning when
that person was arrested at night.  The
magistrate provided appellant with statutory warnings.  The written warnings statement signed by
appellant indicates that he had been accused of AA) parole
violation[,] B) investigation of capital murder.@  The statement further notes that appellant
requested appointed counsel.  The record
also contains a request for counsel, signed by appellant, that lists only the
parole violation in the blanks provided for offenses.  Detective Stanton, who stated that he was
present when the magistrate gave the statutory warnings, testified that
appellant requested counsel only in regards to the parole violation and not in
regards to the investigation of capital murder. 
The officers further explained that the Ainvestigation of
capital murder@ language was written on the warnings
statement only because an assistant district attorney requested that it be
added.  At that time, no steps were taken
to obtain a lawyer to represent appellant. 
Also, no further questions were asked regarding the parole violation.

After receiving the first set of statutory
warnings, appellant signed several more waivers of his rights and made several
more statements concerning various details of the events surrounding Bland=s death.  In the statements, he admitted that Bland had
not threatened him, and he identified several more photographs of items and
locations connected to Bland=s death.  Two of the statements were videotaped.  Appellant also gave permission for a sample
of his saliva to be taken for DNA testing.

On January 15, 2003, an arrest warrant was
issued for appellant for Bland=s murder.  A magistrate administered statutory warnings
relating to the murder charge.  The
written warnings statement signed by appellant indicates that he was accused of
murder and that he requested counsel.  A
signed request for counsel also indicates that it was in relation to the murder
charge.  The officers stated that no
further questioning of appellant occurred after he requested counsel for the
murder charge.

Appellant also testified at the
hearing.  He stated that he was told that
he was being arrested on a parole violation but that he felt like he was taken
to Texas City for questioning regarding a murder.  He didn=t feel like the
officers would have provided him with an attorney had he asked for one during
the interrogations.  He stated that he
was confused, felt intimidated, and would have liked to have had an attorney
representing him.








The trial court denied the motion to
suppress in its entirety.  In written
findings of fact and conclusions of law, the court held, among other things,
that appellant (1) was arrested on the parole violation, (2) was brought before
a magistrate without unnecessary delay, (3) had originally requested an
attorney only on the parole violation, and (4) had consistently waived his
right to counsel on the murder investigation until the second set of statutory
warnings were administered by the magistrate.

Discussion

In his sole issue, appellant contends that
the trial court erred in refusing to suppress the statements he gave to the
Texas City police because his constitutional and statutory rights were
violated.  We review a trial court=s ruling on a
motion to suppress evidence under an abuse of discretion standard.  Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996).  At a
suppression hearing, the trial judge is the sole fact finder.  Arnold v. State, 873 S.W.2d 27, 34
(Tex. Crim. App. 1993).  We give almost
total deference to the trial court=s determination of
historical facts when supported by the record, particularly if the findings
turn on witness credibility and demeanor. 
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
The same deference is accorded to determinations of mixed questions of
law and fact if their resolution depends upon witness credibility and
demeanor.  Ross, 32 S.W.3d at
856.  Issues that present purely legal
questions are considered under a de novo standard.  Id. 
We will sustain the trial court=s ruling if it is
reasonably supported by the record and is correct on any theory of law
applicable to the case.  Villarreal,
935 S.W.2d at 138.

Appellant makes two basic assertions: (1)
the officers failed to take him before a magistrate without unnecessary delay,
and (2) the officers continued to question him after he requested an attorney
in violation of his constitutional rights. 
We will discuss each contention in turn.

 








Without Unnecessary Delay

Appellant first asserts that the Texas
City officers failed to take him before a magistrate without unnecessary delay
as required by section 15.17 of the Texas Code of Criminal Procedure.  Tex.
Code Crim. Proc. Ann. art. 15.17 (Vernon 2005).[1]  He alleges that the trial court erred in
determining that he was taken before a magistrate without unnecessary delay
and, thus, in determining that his statements were admissible.  Article 15.17 requires that a person arrested
pursuant to an arrest warrant must be taken before a magistrate without
unnecessary delay.  Id.; Cantu
v. State, 842 S.W.2d 667, 680 n.9 (Tex. Crim. App. 1992).[2]  However, the failure to take an arrestee
before a magistrate in a timely fashion will not invalidate evidence garnered
from his detention in the intervening period unless there is proof of a causal
connection between the delay and the gathering of the evidence.  Jones v. State, 944 S.W.2d 642, 649
n.10 (Tex. Crim. App. 1996); Cantu, 842 S.W.2d at 680; Zarychta v.
State, 44 S.W.3d 155, 169 (Tex. App.CHouston [14th
Dist.] 2001, pet. ref=d).








Here, appellant argues that the fact that
he was arrested on the Apretext@ of a parole
violation but then questioned on the murder demonstrates a causal connection
between the delay and the confessions. 
Appellant, however, does not cite any authority in support of this
argument, nor does he explain how an arrest on one charge and questioning on
another potential charge established a connection between the delay in bringing
him before a magistrate and his providing statements to the police.  Instead, appellant points to his own
testimony wherein he stated that he was confused, intimidated, wanted an
attorney present, and didn=t know what was
happening.  As the sole trier of fact,
the trial court could have disregarded appellant=s self-serving
testimony in favor of that of the police officers who questioned him.  See Arnold, 873 S.W.2d at 34.  Both Detective Stanton and Sergeant
Goetschius testified that appellant was calm and cooperative, they provided him
with a meal and something to drink, and they offered to let him use a
telephone.  They further testified that
appellant began making his first voluntary statement about four to
four-and-a-half hours after his arrest.  See
Jenkins v. State, 912 S.W.2d 793, 807 (Tex. Crim. App. 1993) (holding that
sixteen hours was not an unnecessary delay in taking an arrestee before a
magistrate without analysis of conditions or circumstances).  We find that appellant has failed to
demonstrate a causal connection between the delay in bringing him before a
magistrate and his statements to police. 
See Cantu, 842 S.W.2d at 680 (holding defendant failed to
demonstrate a connection between delay and statements).

Furthermore, it is well-settled that an
unreasonable delay in bringing an arrestee before a magistrate will not
invalidate an otherwise voluntary confession if the arrestee was properly
advised of his Miranda rights prior to making the statement.  Jones, 944 S.W.2d at 649 n.10; Cantu,
842 S.W.2d at 680; Zarychta, 44 S.W.3d at 169.  Here, the officers testified that they
explained appellant=s Miranda rights to him, and he
subsequently voluntarily signed waivers of those rights.  Such waivers in fact appear in the record
from the suppression hearing. 
Accordingly, we find that appellant=s first assertion
is without merit.

Right to Counsel








We next turn to appellant=s argument
concerning his request for appointment of counsel when the magistrate gave him
his first set of statutory warnings.[3]  Appellant suggests that, at a minimum, this
request for counsel should have prevented the admission of any statements given
after he made the request.[4]  In support of this argument, appellant cites
only Coleman v. State, 646 S.W.2d 937 (Tex. Crim. App. 1983).  In Coleman, the Court of Criminal
Appeals explained that when an accused invokes his Fifth Amendment, or AMiranda,@ right to counsel,
a valid waiver of that right cannot be established by showing that the accused
continued to respond to questions, and the accused should not be subject to
further interrogation until counsel has been made available.  Id. at 939 (following Edwards v.
Arizona, 451 U.S. 477, 484 (1981)).

As subsequent United States Supreme Court
and Texas Court of Criminal appeals cases illustrate and explain, the United States
Constitution provides two distinct guarantees of the right to counsel.  See, e.g., McNeal v. Wisconsin, 501
U.S. 171, 176-78 (1991); Green v. State, 934 S.W.3d 92, 97 (Tex. Crim.
App. 1996).

Under the Sixth Amendment, the right to
counsel is a broad guarantee of assistance of counsel for defense in a criminal
prosecution.  U.S. Const. amend. VI; see also McNeal, 501 U.S. at
175.  The Sixth Amendment right, however,
does not arise until adversarial proceedings have begun, whether by formal
charge, preliminary hearing, indictment, information, or arraignment.  United States v. Gouveia, 467 U.S.
180, 188 (1984).  Additionally, the Sixth
Amendment right is offense specific.  McNeal,
501 U.S. at 175.  In other words, the
fact that a suspect has invoked his or her Sixth Amendment right to counsel in
relation to one offense bars police from interrogating the suspect, without
counsel, in relation to that offense, but it does not bar police from
interrogating the suspect in regard to another unrelated offense.  Id. at 175-76.








Under the Fifth Amendment, a right to
counsel exists as a prophylactic protection of the right to remain silent; in
other words, it exists to counteract the inherent pressures of custodial
interrogation.  U.S. Const. amend. V; McNeal, 501 U.S. at 176 (citing Miranda
v. Arizona, 384 U.S. 436, 475 (1966)). 
Once a suspect asserts his or her Fifth Amendment right, he or she
cannot be further interrogated outside the presence of counsel unless the
suspect him or herself initiates the contact. 
Edwards, 451 U.S. at 484-85. 
This is true, so long as there is no break in custody, even if the
subsequent interrogation concerns an offense unrelated to the subject of the
first interrogation.  Arizona v.
Roberson, 486 U.S. 675, 685-88 (1988); Green, 934 S.W.2d at 97.  Thus, the Fifth Amendment right to counsel is
said to be Anon-offense specific.@  Green, 934 S.W.2d at 97.

Because invocation of the Fifth Amendment
right to counsel is non-offense specific but invocation of the Sixth Amendment
right is offense specific, we must determine in the present case whether
appellant invoked either his Fifth or Sixth Amendment rights or both, and, if
appellant invoked only his Sixth amendment right, we must determine whether he
invoked it for the parole violation, the murder allegation, or both.  As discussed below, we find that the record
supports the conclusion that appellant invoked only his Sixth Amendment right
in regards to the parole violation; thus, his subsequent statements regarding
the murder were not inadmissible as violative of his constitutional rights to
counsel.

The point at which adversarial judicial
proceedings begin is a matter of state law. 
Hidalgo v. State, 983 S.W.2d 746, 752 (Tex. Crim. App.
1999).  At least one court of appeals has
expressly held that a section 15.17 appearance before a magistrate constitutes
the initiation of adversarial judicial proceedings for Sixth Amendment
purposes, provided an arrest warrant has issued.  Hargrove v. State, 162 S.W.3d 313, 320
(Tex. App.CFort Worth 2005, pet. ref=d) (analyzing
Court of Criminal Appeals decisions concerning initiation of adversarial
proceedings); see also Lemmons v. State, 75 S.W.3d 513, 520 n.8
(Tex. App.CSan Antonio 2002, pet. ref=d)(noting that
State conceded that adversarial proceedings had been initiated where magistrate=s section 15.17
hearing occurred seven days before the








 interrogation
in question).[5]  In the absence of explicit guidance from the
Court of Criminal Appeals, we agree with the holding in Hargrove.

Here, an arrest warrant had issued on the
parole violation prior to appellant=s first appearance
before the magistrate.  The magistrate
then administered statutory warnings to appellant and denied bond.  However, an arrest warrant for the murder
charge did not issue until the following day, when appellant was again taken
before the magistrate.  Therefore, it
appears that at the time of the first appearance before a magistrate, formal
proceedings had been initiated on the parole violation but not on the murder
charge.  See Hargrove, 162 S.W.3d
at 320.








During his first appearance before the
magistrate, appellant signed a request for appointment of counsel, indicating  that it was for the parole violation
offense.  The statutory warnings
statement signed at the same appearance, however, indicated that the warnings
were given for both the parole violation offense and Ainvestigation of
capital murder.@ 
The statement further notes that appellant requested appointed
counsel.  In its findings of fact, the
trial court found that appellant had requested an attorney only for the parole
violation.  The trial court=s finding is
supported by the request signed by appellant, which lists only the parole
violation.  It is also supported by the
testimony of Detective Stanton, who stated that he was present when the
magistrate gave the warnings, and that appellant requested counsel only in
regards to the parole violation and not to the investigation of capital
murder.  Detective Stanton further
explained that the investigation language was written on the statutory warnings
statement only because an assistant district attorney requested that it be
added.  Additionally, the record contains
several more waivers of the right to counsel signed by appellant after he
received the first set of statutory warnings from the magistrate.

Although the listing of the murder
investigation on the statutory warnings statement could be considered some
evidence supporting appellant=s contention that
he requested counsel for both offenses, the trial court was within its
discretion in believing the officers= explanation.  See Ross, 32 S.W.3d at 856; Arnold,
873 S.W.2d at 34.  Because the Sixth
Amendment right is offense specific, appellant=s assertion of the
right in regard to the parole violation did not bar officers from questioning
appellant regarding the murder allegation.








Next, we consider whether appellant=s request for
appointed counsel for the parole violation also constituted a Fifth Amendment
assertion of the right to counsel such that it was improper for officers to
continue questioning him about the murder allegation.  The Fifth Amendment right to counsel is
invoked Aonly when the suspect
>ha[s] expressed= his wish for the
particular sort of lawyerly assistance that is the subject of Miranda.@  McNeal, 501 U.S. at 178 (quoting Edwards,
451 U.S. at 484).  AIt requires, at a
minimum, some statement that can reasonably be construed to be expression of a
desire for the assistance of an attorney in dealing with custodial
interrogation by the police.@  Id.; Green, 934 S.W.2d at 97
(quoting McNeal).  In McNeal,
the Court went on to hold that invocation of the offense specific Sixth
Amendment right to counsel at a bail hearing did not by itself invoke the non-offense
specific Fifth amendment right to counsel. 
501 U.S. at 178-80.  In doing so,
the court quoted the Washington Supreme Court: A[T]o find that
[the defendant] invoked his Fifth Amendment right to counsel on the present
charges merely by requesting the appointment of counsel at his arraignment on
the unrelated charge is to disregard the ordinary meaning of that request.@  Id. at 178-79 (quoting State v.
Stewart, 780 P.2d 844, 849 (1989)). 
Similarly, in Green, the Court of Criminal Appeals relied on McNeal,
stating that a suspect=s request when he appeared before a
magistrate that the latter appoint counsel did not constitute Aan expression for
assistance in dealing with custodial interrogation by the police.@   934 S.W.2d at 97.  The court held that the suspect=s Sixth Amendment
request for counsel on a robbery charge did not prevent his subsequent
interrogation on a murder allegation.  Id.
at 98.

The situation faced by the court in Green
was substantially similar to the situation now before us.  Although appellant requested appointment of
counsel on the parole violation, there is no showing that he expressed a desire
for the assistance of an attorney in dealing with custodial interrogation.[6]  Furthermore, appellant never requested assistance
of counsel in response to police questioning, and he consistently waived his
rights to remain silent and obtain the assistance of counsel in regard to the
custodial interrogation.  See id.
at 97 (noting that at no time did suspect request the assistance of counsel in
response to police questioning). 
Accordingly, the trial court did not violate appellant=s constitutional
rights in admitting the statements. 
Appellant=s sole issue is overruled.

The trial court=s judgment is
affirmed.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed April 13, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

PublishC Tex. R. App. P. 47.2(b).











[1]  In his brief,
appellant discusses at some length the fact that although he was assigned to
parole in Harris County and arrested in Harris County, the officers took him to
Galveston County before bringing him before a magistrate.  However, appellant does not argue that this
procedure alone rendered his statements inadmissible; the only argument
appellant makes in relation to these facts is that he was not taken before a
magistrate without unnecessary delay.  We
therefore concentrate our analysis on the argument made and not on appellant=s transfer from Harris County to Galveston County.





[2]  The State
contends that article 15.17 is inapplicable because appellant was arrested
pursuant to a parole violation warrant and not an arrest warrant issued by a
magistrate.  Because we find that the
issues raised by appellant are without merit, we need not address this argument
by the State.





[3]   It is unclear
whether appellant intended to raise the right to counsel issue as a separate
ground for reversal or only as part of his unnecessary delay argument.  However, in an abundance of caution, we
address the right to counsel issue as an independent assertion of error.





[4]  The issue is
potentially meaningful because although appellant made statements confessing to
having killed Bland both before and after making the request for counsel, he
made statements denying that Bland had threatened him only
after he made the request for counsel. 
At trial on the merits, appellant=s
primary legal theory was that he acted in self-defense.





[5]  In McFarland
v. State, the Court of Criminal appeals listed examples of actions which
have been held to constitute the initiation of adversary proceedings in
Texas.  928 S.W.2d 482, 507 (Tex. Crim.
App. 1996).  The court included this
entry: Aan Article 15.17 >warning
hearing,= where arrest warrant was present.@  Id.  In support of this entry, the court cited Nehman
v. State, 721 S.W.2d 319 (Tex. Crim. App. 1986).  However, in Nehman, not only had an
arrest warrant issued by the time of the magistrate=s hearing, but the court stated that formal charges
had been filed.  721 S.W.2d at 323
n.2.  It is unclear whether by Aformal charges@ the
court meant merely that an arrest warrant had issued or something more.  See Green v. State, 872 S.W.2d 717,
729-32 (Tex. Crim. App. 1994) (Meyers, J., concurring) (discussing Nehman
and concluding that (1) Ait is fair to say@ that it
stands for the proposition that arrest warrants constitute formal criminal
charges in the Sixth Amendment context, and (2) this conclusion Ais not well supported by federal Sixth Amendment
jurisprudence@ or Athe realities of criminal prosecution under Texas law@).  It is also,
therefore, unclear whether formal charges had been filed against appellant in
the present case.  Thus, neither McFarland
nor Nehman is necessarily controlling on this issue.





[6]  There is one distinguishing
feature: in Green, the interrogation of the suspect regarding the murder
allegation did not occur until several days after he requested appointment of
counsel on the robbery charge; whereas, in the present case, appellant was
subject to interrogation on the murder allegation both before and after he
requested appointment of counsel on the parole violation.  See 934 S.W.2d at 96.  Although noteworthy, this distinction does
not render McNeal and Green inapplicable to the present case.