IN THE

FIRST COURT OF APPEALS OF 01-15-00658-CV ✓ ✓
TEXAS 01-15-00645-CV ✓
NOS. 01-15-00448-CV, 01-15-00677-CR & 01-15-00657-CV ✓
01-15-00657-CV ✓

Justia › U.S. Law › Case Law › Texas Case Law › Texas Court of Criminal Appeals Decisions › 1994 › Green v. State

AMENDED MOTIONS FOR FREE APPELLATE AND MANDAMUS RECORD AND TO

## Green v. State

PROCEED IN BOTH TRIAL AND APPELLATE COURT AS A PAUPER

**Annotate this Case**

UNDER ALL APPLICABLE STATUTES AND RULE 20, TEX. R. APP. Proc

**872 S.W.2d 717 (1994)** WITH AFFIDAVIT IN SUPPORT THEREOF

TO THE HONORABLE JUSTICES OF SAID COURTS

Clifton Edmond GREEN, Appellant, v. The STATE of Texas, Appellee.

NOW Comes Relator-Appellant and motions as indicated

No. 1388-91.

above and, in support, incorporates herein fully the attached

**Court of Criminal Appeals of Texas, En Banc.**

Affidavit filed in trial court on May 15, 2015 as

January 12, 1994.

his same Affidavit in support of pauper request.

*718 Kenneth W. Smith, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Alan Curry & Natalie Fleming, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before the Court en banc.

OPINION ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW

PER CURIAM.

Appellant was convicted of the offense of possession of cocaine in an amount less than 28 grams, and his punishment, enhanced by two prior felony convictions, was assessed at confinement for 50 years. In an unpublished opinion the court of appeals affirmed his conviction, holding, inter alia, that although appellant was entitled to counsel under the Sixth Amendment at his so-called preliminary initial appearance ("PIA"), he essentially waived that right by not requesting appointment of counsel at that time under Article 1.051(c), V.A.C.C.P. Green v. State, No. 01-90-00662-CR, 1991 WL 189699 (Tex. App.Houston [1st], delivered September 26, 1991). In his petition for discretionary review

The attached statutory warnings and this court of
Criminal Appeals now answers for that court what happened

on Texas Independence day - Friday, 02 March 1990 and Why and how due process was VIOLATED. This is so interesting for

appellant now contends that the court of appeals erred to conclude he waived his right to counsel at the PIA b fa ing to ... oke it. In a cross-petition for discretionary review the State argues that in any event the court of appeals erred to hold appellant had a Sixth Amendment right to counsel at the PIA. We granted both petitions pursuant to Tex.R.App.Pro., Rule 200(c)(2). ✗

US Magistrate Judge Stacy because Whitfield has much in common with Green.

I.

Appellant was arrested without a warrant on March 2, 1990, for the offense of possession of cocaine. The next day, on March 3, a felony complaint was filed. The complaint contains a notation that indicates bail in the amount of $10,000, but the record is silent as to whether bail was actually set at this amount on March 3, and, if so, by whom.[1] On March 4, 1990, appellant appeared before a magistrate for what we are told was his PIA. At this time the magistrate warned appellant pursuant to Article 15.17(a), V.A.C.C.P., and, according to the docket sheet, a finding of probable cause was then made.[2] The record does not demonstrate, and appellant does not contend, that the magistrate set bail at this time.[3] The *719 "case" was then reset, again, according to the docket sheet, for the next day, March 5, 1990. On that date appellant filed a pauper's oath and counsel was appointed to represent him. Appellant was indicted on March 23, 1990, and on June 29, 1990, he was re-indicted. On July 2, 1990, appellant was convicted under the second indictment, and the original indictment was dismissed.

Appellant contended in the court of appeals that his right to counsel under both the Sixth Amendment and Article I, § 10 of the Texas Constitution was violated because he was not represented by counsel at the PIA. The court of appeals agreed that appellant had a right to counsel, citing Nehman v. State, 721 S.W.2d 319 (Tex.Cr.App.1986) for that proposition. But Nehman does not purport to address the right to counsel under Article I, § 10in fact, the holding in Nehman is expressly limited to the Sixth Amendment. See 721 S.W.2d at 320. Therefore, the court of appeals did not resolve the issue as to appellant's right to counsel under Article I, § 10. Appellant does not specifically complain of this defect, however, in his petition for discretionary review. We limit our consideration, accordingly, to the Sixth Amendment issue that was addressed in the court of appeals.

Having held that appellant did indeed enjoy a Sixth Amendment right to counsel at his PIA, the court of appeals reasoned that he was not denied that right because he never requested the appointment of counsel for purposes of representation at that hearing, under the terms of Article 1.051(c), supra. That provision mandates that "the court" "appoint counsel to represent the defendant as soon as possible[,]" "[i]f" he is "indigent ... and requests appointed counsel[.]" Now in his petition for discretionary review appellant

✗ H-96-00071-CV, USDC, SD Tex. Houston Division

(Tex.Cr.App.1989) ("return of an indictment signals" initiation of adversary judicial proceedings, McCambridge v. State, 712 S.W.2d 499, at 502 (Tex.Cr.App. 1986) (in misdemeanor case, defendant's "Sixth Amendment right to counsel did not attach until the complaint and information were filed."). On the other hand, though we have made it clear that an arrest alone does not trigger adversarial judicial proceedings, with or without a warrant, Dunn v. State, 696 S.W.2d 561 (Tex.Cr.App.1985); Garcia v. State, 626 S.W.2d 46, at 53 (Tex.Cr.App. 1981); see also McGee v. Estelle, 625 F.2d 1206 (C.A.5 1980), nor does an Article 15.17 warning, Wyatt v. State, 566 S.W.2d 597, at 600 (Tex.Cr.App.1978), a two judge panel opinion has held that the filing of a felony complaint does. Barnhill v. State, 657 S.W.2d 131, at 132 (Tex.Cr.App.1983). Cf. Nehman v. State, supra, at 322 & 323, n. 2 (adversarial judicial proceedings had begun by the time of Article 15.17 warnings because by then unspecified "charges" had been filed against defendant); Miffleton v. State, 777 S.W.2d 76, at 78 (Tex.Cr.App.1989) (adversary judicial proceedings commence in misdemeanor prosecution when "the complaint is filed."); Forte v. State, 707 S.W.2d 89, at 92 (Tex.Cr.App.1986) (same). This latter view is at least consistent with, if not dictated by, precedent from the United States Supreme Court. See Moore v. Illinois, supra; Brewer v. Williams, 430 U.S. 387, at 399, 97 S.Ct. 1232, at 1239-40, 51 L.Ed.2d 424, at 436 (1977); Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

We need not here decide when adversary judicial proceedings commence. For even if the felony complaint was sufficient to mark the initiation of adversary judicial proceedings, we agree with the State that nothing occurred at appellant's PIA that would render it a "critical stage" of the prosecution against him. The court of appeals erred to hold he had any Sixth Amendment right to waive.

B.

Not every event following the inception of adversary judicial proceedings constitutes a "critical stage" so as to invoke the right to counsel under the Sixth Amendment.[4] E.g., United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (post-indictment photographic display used to test witness identification prior to trial is not a "critical stage"). In assessing whether a particular stage of the pre-trial proceedings is a "critical" one, "the test utilized by the Court has called for examination of the event in order to determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." Id., U.S. at 313, S.Ct. at 2575, L.Ed.2d at 628. In essence, we must scrutinize any pre-trial event with a view to ascertaining whether presence of counsel is necessary to assure fairness and the effective assistance of counsel at trial, which is, after all, "the core *721 purpose of the counsel guarantee ...,

to appoint counsel for the indigent accused. See Article 1.051(c), supra, and Articles 16.01, 16.06 & 6.17, V.A.C.C.P. Moreover, an examining trial in large measure affords an accused the opportunity to discover the State's case against him. Given its adversarial character, and the potential it presents for the preparation of a trial defense, an examining trial is arguably a critical stage for purposes of Sixth Amendment analysis. See Coleman v. Alabama, 399 U.S. 1, at 9, 90 S.Ct. 1999, at 2003, 26 L.Ed.2d 387, at 397 (1970); Gerstein v. Pugh, U.S. at 122-23, S.Ct. at 867-68, 43 L.Ed.2d at 70-71. In fact, the Supreme Court barely avoided deciding whether an examining trial is a critical stage in Pointer v. Texas, 380 U.S. 400, at 379-380, 85 S.Ct. 1065, at 1067, 13 L.Ed.2d 923, at 925-26 (1965).

But appellant does not claim that an examining trial was conducted at his PIA. Nor does he claim that the magistrate should have held an examining trial at that time. He does not even claim that the probable cause determination the magistrate made at the PIA would somehow preclude a later examining trial. In short, appellant does not now complain of having been deprived of any advantage a full-blown examining trial would have afforded. Indeed, counsel appointed for appellant the day after the PIA could easily *722 have requested an examining trial, but did not. Absent a claim that the PIA was, or should have been, an examining trial, for all we can tell the probable cause determination that was made there was nothing more than the type of non-adversarial proceeding held not to constitute a critical stage in Gerstein v. Pugh, supra.

Finally, the record does not establish that bail was set at the PIA. Nevertheless, appellant argues that had counsel been appointed prior to the PIA, he could have contested the bail that had (apparently) been set previously. See nn. 1 & 3, ante. Undoubtedly this is true, but it does not convert the PIA into a critical stage. Other than its Article 15.17 aspect, the PIA, per se, is not a requirement of state law. While excessive bail violates Article I, § 13 of the Texas Constitution, the traditional method of attacking excessive bail is by application for writ of habeas corpus. See 1 Braden, et al, The Constitution of the State of Texas: An Annotated and Comparative Analysis, (1977), at 46. Appellant does not claim he was deprived of counsel to represent him in any habeas corpus action to contest his bail. Indeed, counsel was appointed for him the day after the PIA; yet the record does not reflect appellant ever sought a reduction of bail by this usual procedure. In any event, appellant does not demonstrate that a failure to reduce his bail somehow impacted the fairness of, or counsel's ability effectively to represent him at, his trial. See United States v. Ash, supra; United States v. Wade, supra. Under the circumstances, the possibility that a lawyer might have contested bail at the PIA does not elevate that proceeding to the level of a critical stage.

We hold that nothing the record shows to have occurred at appellant's PIA amounted to a critical stage in making his Sixth Amendment right to counsel. Thus, though the court of appeals erroneously held appellant waived any right to counsel under the Sixth Amendment, it also erred to hold he had such a right to begin with. Accordingly, we affirm its judgment.

MILLER, J., concurs in the result.

MALONEY, J., dissents with note: Because I believe that the PIA hearing is a critical stage of the proceeding entitling the appellant to counsel under the Sixth and Fourteenth Amendments, compare Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) and TEX.CODE CRIM.PROC. ANN. art. 15.17, I respectfully dissent.

CLINTON, Judge, concurring.

Like Judge Meyers, I join the opinion of the Court. I add these remarks in response to his concurring opinion, in which he advocates we hold appellant had no right to counsel at his "preliminary initial appearance" because by that time adversarial judicial proceedings had not begun.

The Sixth Amendment to the Constitution of the United States and Article I, § 10, of the Constitution of the State of Texas, guarantee that "[i]n all criminal prosecutions" the accused shall have "the Assistance of Counsel for his defence," and "the right of being heard by himself or counsel, or both[,]" respectively.[1]

*723 On the question of when the right to counsel must be honored in the course of a "criminal prosecution," the prevailing federal view is derived from the principle laid down in Powell v. Alabama, 287 U.S. 45, at 69, 53 S.Ct. 55, at 64, 77 L.Ed. 158, at 170 (1932), that one accused of crime "requires the guiding hand of counsel at every step in the proceedings against him."[2] Thus the right "attaches" when accusatory proceedings are initiated against himindiscriminately described as "adversary judicial proceedings" and "judicial criminal proceedings," Kirby v. Illinois, 406 U.S. 682, at 688, 92 S.Ct. 1877 at 1882, 1883, 32 L.Ed.2d 411, at 417 (1972) (but right to counsel under Wade and Gilbert inapplicable to preindictment or pre-charge show-up); "judicial proceedings" and "adversary proceedings," Brewer v. Williams, 430 U.S. 387, at 399, 401, 97 S.Ct. 1232, at 1239, 1240, 51 L.Ed.2d 424, at 436, 438 (1977) (initiated in one place by arrest on warrant, booking and "arraignment" thereon before a judge who advised him of Miranda rights and committed to jail to await transfer to another place);[3] "adversary judicial criminal proceedings," Moore v. Illinois, 434 U.S. 220, at 228, 98 S.Ct. 458, at 464–465, 54 L.Ed.2d 424, at 433 (1977) (rejecting view that corporeal identification conducted

without counsel excludable only if made after indictment, because "prosecution" commenced with filing a complaint followed by "preliminary hearing [to] determine ... probable cause to bind [accused] over to grand jury and to set bail").[4]

*724 As the Supreme Court recognized in Kirby v. Illinois, supra:

"... But the point is that, while members of the Court have differed as to the existence of the right to counsel in the contexts of some of the above cases, all of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedingswhether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

Id., 406 U.S. at 689, 92 S.Ct., at 1882, 32 L.Ed.2d, at 417 (first emphasis in original). Later in Brewer v. Williams, supra, the Supreme Court added: or arrest on warrant and arraignment thereon.[5]Accord: Michigan v. Jackson, 475 U.S. 625, at 629, 106 S.Ct. 1404, at 1407, 89 L.Ed.2d 631, at 638 (1985) (magisterial arraignment signals initiation of adversary judicial proceedings and thus attachment of Sixth Amendment right to counsel).[6]

Thus, all things considered, resolution of the issue in the instant cause does not turn on whether "the State has filed the kind of accusatory pleading upon which a conviction might lawfully be based[,]" as Judge Meyers would have it. See page 721. Although it is *725 clear enough that the Supreme Court regards as a "formal charge" a sworn complaint under its rules and would under our own rules, see note 1, ante, that term is not a talisman for invoking constitutional rights.

For Sixth Amendment purposes the Supreme Court has made clear that an arrest with a warrant (Brewer v. Williams) or without a warrant (Michigan v. Jackson) followed by an arraignment thereon initiates "adversary judicial criminal proceedings." But that question is "distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel, absent a valid waiver." Michigan v. Jackson, supra, 475 U.S. at 629, n. 3, 106 S.Ct., at 1407, n. 3, 89 L.Ed.2d, at 638, n. 3.[7] After a magisterial arraignment "government efforts to elicit information from the accused, including interrogation, represent `critical stages' at which the Sixth Amendment applies. [citations omitted]." Id., 475 U.S. at 630, 106 S.Ct., at 1408, 89 L.Ed.2d, at 638.

Because I agree the PIA did not constitute a critical stage in the circumstances presented here, I join the per curiam majority opinion in this cause. Unlike Judge Meyers, however, I believe the majority does well to eschew any holding that the Sixth Amendment right to

counsel does not inhere at a PIA because judicial adversarial proceedings have not yet begun as of that time.

BAIRD, Judge, concurring.

I believe the Court is correct in adopting the "critical stage" analysis for determining when an accused is entitled to counsel under the Sixth Amendment. However, I would further hold that the Preliminary Initial Appearance (PIA) hearing under Tex.Code Crim.Proc.Ann. art. 15.17 constitutes a "critical stage" at which the Sixth Amendment right to counsel has attached.

I.

The Supreme Court has held that the right to counsel under the Sixth Amendment attaches at or after the initiation of adversary judicial proceedings against the defendant. United States v. Gouveia, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); Estelle v. Smith, 451 U.S. 454, 469-470, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981); Kirby v. Illinois, 406 U.S. 682, 688-689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). And the Court has acknowledged that certain pre-trial "critical stages" may constitute such adversary judicial proceedings sufficient to trigger a defendant's right to counsel. See, Gouveia, 467 U.S. at 189, 104 S.Ct. at 2298 (citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). See also, Coleman v. Alabama, 399 U.S. 1, 7, 90 S.Ct. 1999, 2003, 26 L.Ed.2d 387 (1970). Whether a pre-trial proceeding constitutes an adversary judicial proceeding essentially depends upon "[whether] the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." Gouveia, 467 U.S. at 188-189, 104 S.Ct. at 2298 (quoting United States v. Ash, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973)). However, the Supreme Court has declined to establish a "bright-line" rule for when adversary judicial proceedings begin and has instead left this decision to state courts. See, Gouveia, 467 U.S. at 187-189, 104 S.Ct. at 2297-2298. See also, Moore v. Illinois, 434 U.S. 220, 228, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977), Fuller v. State, 829 S.W.2d 191, 205 (Tex.Cr.App.1992); and, State v. Barnhill, 657 S.W.2d 131, 132 (Tex.Cr.App.1983). Consequently, it is incumbent upon this Court to determine what point in the proceedings constitutes a "critical stage."

II.

Tex.Code Crim.Proc.Ann. art. 15.17 clearly provides for the right to counsel at a defendant's PIA hearing. Art. 15.17(a) reads, in pertinent part:

*726 In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested ... The magistrate shall inform in clear language the person arrested ... of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel[1] and shall admit the person arrested to bail if allowed by law.[2]

Art. 15.17 implicates both the Fifth and Sixth Amendments by requiring a magistrate to inform a defendant of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1302, 16 L.Ed.2d 694 (1966), and allowing the defendant the opportunity to consult with counsel. Because a defendant's Miranda rights stem from the Fifth Amendment's prohibition against self-incrimination during custodial interrogation, see, Gouveia, 467 U.S. 188 n. 5, 104 S.Ct. 2297 n. 5; and Kirby, 406 U.S. at 688, 92 S.Ct. at 1881, it follows that a defendant's right "to consult counsel" arises independently from the Fifth Amendment. Thus, as the Court of Appeals observed:

... The PIA hearing is merely a procedural bridge that spans the gulf between the right of a defendant to assistance of counsel and the actual appointment of counsel to represent the defendant. Though the hearing takes place after a defendant's right to counsel has attached, the hearing serves the purpose of giving practical effect to an abstract protection....

Oliver v. State, 813 S.W.2d 762, 764-765 (Tex.App.Houston [1st Dist.] 1991), rev'd on other grounds, 872 S.W.2d 713 (Tex.Cr. App. delivered this day).

As the majority recognizes, our decisions on when adversary judicial proceedings begin have been inconsistent. Majority opinion, pp. 719-720. However, we acknowledged in Fuller v. State, 829 S.W.2d 191 (Tex.Cr.App. 1992), that the PIA hearing may constitute just such a "critical stage" at which point a defendant's right to counsel has attached. In Fuller, we recited when an adversary judicial proceeding begins:

... In Texas, a criminal prosecution is variously considered to be in progress after the accused has been formally arrested and taken before a magistrate, or when he has been indicted or charged by complaint and information with a criminal offense.

Id., 829 S.W.2d at 205. Consequently, we are not without a basis to conclude a PIA hearing is a sufficiently "critical stage" to constitute an adversary judicial proceeding, at which point the defendant is entitled to the assistance of counsel. See also, Lucas v. State, 791 S.W.2d 35, 45 (Tex.Cr.App.1989); Janecka v. State, 739 S.W.2d 813, 827 (Tex. Cr.App.1987); Nehman v. State, 721 S.W.2d 319 (Tex.Cr.App.1986); and, Barnhill v. State, 657 S.W.2d 131, 132 (Tex.Cr.App.1983) (panel op.). This is especially true where, as in the instant case, the PIA hearing is held after a formal complaint is filed.[3] See, United States v. Wade, 388 U.S. at 226, 87 S.Ct. at 1932 ("critical stage" normally occurs after a criminal complaint is filed); and, Barnhill, 657 S.W.2d at 132.

## III.

The Court of Appeals relied upon Nehman v. State, 721 S.W.2d 319 (Tex.Cr.App.1986), to hold appellant was entitled to counsel at the PIA hearing. I believe that holding was correct. In Nehman, the defendant was arrested *727 in Iowa as a suspect in a homicide in Amarillo, Texas. An arrest warrant was issued in Amarillo and two police officers travelled to Iowa to escort Nehman to Texas. Upon taking him into custody, the officers informed Nehman of his Miranda rights. Id. at 320. After returning to Amarillo, Nehman indicated that he wished to give a written statement concerning the homicide. Id., at 320-321. As the statement was being prepared, Nehman was taken for his PIA hearing, pursuant to art. 15.17, where the magistrate informed Nehman of his Miranda rights and of his right to have an attorney appointed to represent him. At the PIA hearing, Nehman requested that counsel be appointed. Id., at 321. After the hearing, but prior to receiving counsel, Nehman was returned to the police department where he signed his statement. Id.

On appeal, Nehman claimed the statement was obtained in violation of the Fifth and Sixth Amendments. We declined to address the Fifth Amendment claim and focused instead on Nehman's Sixth Amendment claim, holding: "There is no question that adversarial proceedings had been initiated, and thus, that appellant's Sixth Amendment right to counsel had attached." Id., at 322. We held Nehman's statement was obtained in violation of the Sixth Amendment. Id., at 323. Therefore, Nehman clearly stands for the proposition that a PIA hearing is a "critical stage" at which point a defendant's right to counsel under the Sixth Amendment has attached.

In holding that the Court of Appeals erred in concluding appellant's PIA hearing was a "critical stage," the majority entirely disregards Nehman. As stated above, I believe the Court of Appeals correctly relied on Nehman. In the instant case, as in Nehman, appellant's PIA hearing was conducted after the complaint was filed but before

indictment. See Nehman, 721 S.W.2d at 323 n. 2. Insofar as the majority fails to distinguish or overrule Nehman, I believe that Nehman is controlling. Moreover, at least three courts of appeals have relied upon Nehman to hold that a defendant's PIA hearing constitutes a "critical stage" of the proceedings against the defendant. See, State v. Hernandez, 842 S.W.2d 306, 311 (Tex.App.San Antonio 1992, pet. ref'd); Alford v. State, 788 S.W.2d 436, 439 (Tex.App.Houston [1st Dist.] 1990); and, Higginbotham v. State, 769 S.W.2d 265, 268 (Tex.App.Houston [14th Dist.] 1989), rev'd on other grounds, 807 S.W.2d 732 (Tex.Cr.App.1991). Therefore, I would hold that a PIA hearing under art. 15.17 represents a "critical stage" at which point a defendant's right to the assistance of counsel has attached.

IV.

In Oliver v. State, 872 S.W.2d 713 (Tex.Cr. App. delivered this day), we held that a defendant does not waive his right to counsel at a pre-indictment hearing merely by failing to affirmatively request counsel. Id., 872 S.W.2d at 715 (citing Swenson v. Bosler, 386 U.S. 258, 260, 87 S.Ct. 996, 998, 18 L.Ed.2d 33 (1967); and Ex parte Rains, 555 S.W.2d 478, 482 (Tex.Cr.App.1977)). See also, Barker v. Wingo, 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972) (no presumption of waiver of constitutional right from inaction). Instead, for there to be a valid waiver of counsel, the record must show a defendant affirmatively declined counsel. See, Oliver, 872 S.W.2d at 715. See also, Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). It follows then, in the instant case, that appellant did not waive his right to counsel simply by failing to request counsel at the PIA hearing.

Since appellant was entitled to counsel at the PIA hearing it is necessary to determine whether he was harmed by the failure to provide counsel. Violations of the Sixth Amendment are subject to a "harmless error" analysis. Satterwhite v. Texas, 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988); and, Sterling v. State, 830 S.W.2d 114, 121 (Tex.Cr.App.1992). In conducting such an analysis, we look to see whether the failure to provide appellant with counsel at his PIA hearing contributed to either his conviction or punishment. Tex. R.App.P. Rule 81(b)(2).[4]Compare, Hernandez *728 v. State, 808 S.W.2d 536, 539 (Tex.App. Waco 1991); and, Whittington v. State, 781 S.W.2d 338, 341 (Tex.App.Houston [14th Dist.] 1989, pet. ref'd). The record indicates that the magistrate made a probable cause determination at the PIA hearing. While it is possible that counsel could have persuaded the magistrate that probable cause was lacking, the grand jury's subsequent indictment of appellant would have preempted the magistrate's findings. See, Whittington, 781 S.W.2d at 341. Moreover, the record indicates appellant received counsel the day after the PIA hearing.[5] We find that

appellant's failure to receive counsel at his PIA hearing did not contribute to either appellant's conviction or punishment. The error, therefore, was harmless.[6]

With these comments, I join only the judgment of the Court.

MEYERS, Judge, concurring.

I join the Court's opinion because I subscribe fully to its "critical stage" analysis and because I am willing to concede that the criticalness for Sixth Amendment purposes of a so-called "preliminary initial appearance" (PIA) is here contested by the State's petition for discretionary review. But it is not my impression, nor do the papers in this case fairly support a conclusion, that review was actually granted to decide whether the PIA was a "critical stage" of the proceedings against Appellant.

The Court of Appeals, relying only on Nehman v. State, 721 S.W.2d 319, 322 (Tex.Crim. App.1986), held simply that "Appellant was entitled to assistance of counsel at the PIA." Green v. State, No. 01-90-00662-CR, 1991 WL 189699 (Tex.App.Houston [1st] Sept. 26, 1991) (unpublished), Slip Op. at 5. Nehman, in turn, stands only for the proposition that "[t]here is no question that adversarial proceedings ha[ve] been initiated" for Sixth Amendment purposes by the time of an "Art. 15.17 warning hearing." 721 S.W.2d at 322 (internal quotation marks omitted). Thus, the opinion which we here review does not expressly or implicitly include a decision on the question of criticalness.

Moreover, the State mainly argues in its petition that the Court of Appeals position, and therefore also the holding in Nehman, is untenable because adversary judicial proceedings are not really initiated in felony cases until the Grand Jury returns an indictment. State's PDR at 5-7 (emphasis omitted). Although the State does "note[] that... [a] probable cause determination is not a critical stage" under Supreme Court precedent, this is not really the crux of its argument. State's PDR at 5 (internal quotation marks omitted). It therefore seems clear to me that the question actually presented for review in this case is whether, under Texas law, the Houston PIA occurred after the inception of a formal criminal prosecution against Appellant. We need not decide whether the PIA was a so-called "critical stage" of the prosecution unless we first conclude that a prosecution had in fact begun. McCambridge v. State, 712 S.W.2d 499, 502 n. 11 (Tex.Crim.App.1986); Forte v. State, 707 S.W.2d 89, 92 (Tex.Crim.App.1986). I write separately to elaborate my own views on this question.

The Sixth Amendment to the United States Constitution broadly assures that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This right is applicable in state criminal prosecutions through

the Due Process Clause of the Fourteenth Amendment, Gideon v. Wainwright, *729 372 U.S. 335, 83 S.Ct. 792, 1 L.Ed.2d 799 (1963), but is effective "only at or after the initiation of adversary judicial proceedings against the defendant." United States v. Gouveia, 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984). Whether adversary judicial proceedings have been instituted is, of course, a matter of state law. Moore v. Illinois, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).

Unfortunately, our precedents do not clearly or unambiguously mark the inception of criminal proceedings in this State. We have usually insisted that the Sixth Amendment right to counsel be effectuated only after the filing of an indictment or of a formal complaint and information. DeBlanc v. State, 799 S.W.2d 701, 706 (Tex.Crim.App. 1990); Spence v. State, 795 S.W.2d 743, 752 (Tex.Crim.App.1990); Miffleton v. State, 777 S.W.2d 76, 78 (Tex.Crim.App.1989); McCambridge, 712 S.W.2d at 502; Forte, 707 S.W.2d at 91-92. But we have not consistently held that formal criminal prosecution must necessarily begin in this way. Indeed, we have even held that execution of an arrest warrant may be a sufficiently formal accusation under Texas law to trigger the application of Sixth Amendment protections. Thus, in Nehman, upon which the Court of Appeals expressly relied in this case, the accused was arrested in Iowa on a murder warrant issued from Potter County, Texas, and then returned to Amarillo for prosecution. Investigating officers obtained a written confession from him, which was completed after he had been taken before a magistrate, warned in the manner required by article 15.17 of the Code of Criminal Procedure, and furnished with appointed counsel. Without citation of authority or further discussion of the issue, we concluded that, "since charges were filed against appellant ... by the time of [his] Art. 15.17 warning hearing[,]" Id. at 323 n. 2 (internal quotation marks omitted), "adversarial proceedings had been initiated and... appellant's Sixth Amendment right to counsel had attached."[1]Id. at 322. Accordingly, it is fair to say that Nehman does stand for the proposition that arrest warrants constitute formal criminal charges for purposes of implementing the Sixth Amendment right to counsel in Texas. See also Lucas v. State, 791 S.W.2d 35, 45 (Tex.Crim. App.1989); Janecka v. State, 739 S.W.2d 813, 826 (Tex.Crim.App.1987); Barnhill v. State, 657 S.W.2d 131, 132 (Tex.Crim.App.1983) (panel opinion).

But our position in this matter is not well supported by federal Sixth Amendment jurisprudence, nor does it comport with the realities of criminal prosecution under Texas law. Although Nehman's language is reminiscent of that used by the United States Supreme Court in Brewer v. Williams,[2] a case similar on its facts, the significant event in Brewer was not the warrant of arrest but the circumstance of a judicial arraignment on the warrant. To regard Brewer as authority for the proposition that Nehman was facing

formal criminal charges would, therefore, require interpreting the procedure contemplated by article 5.17 as tantamount to an arraignment. See Spence, 795 S.W.2d at 752-53 ("statutory warnings are not 'formal charges'"). Clearly this was not our holding in Nehman, which declared that formal criminal charges were already pending "by the *730 time of [Nehman's] Art. 15.17 warning hearing."

In Texas, as elsewhere, the purpose of an arraignment is to identify the accused and hear his plea to the State's charging instrument. Tex.Code Crim.Proc.Ann. art. 26.02; Hamilton v. Alabama, 368 U.S. 52, 54 n. 4, 82 S.Ct. 157, 158 n. 4, 7 L.Ed.2d 114 (1961); 21 Am.Jur.2d Criminal Law §§ 433-442; 22 C.J.S. Criminal Law §§ 356-364. It is often the first adversarial confrontation between an accused and government prosecuting attorneys after the filing of formal criminal charges. Texas procedure requires there to be an arraignment "[i]n all felony cases, after indictment, and all misdemeanor cases punishable by imprisonment," Code Crim.Proc. art. 26.01, and provides that "[n]o arraignment shall take place until the expiration of at least two entire days after the day on which a copy of the indictment was served on the defendant, unless the right to such copy or to such delay be waived, or unless the defendant is on bail." Code Crim.Proc. art. 26.03. Nothing could be clearer than that an arraignment in all cases of felony cannot occur prior to the return of an indictment, both because the law expressly forbids it and because there is no formal charge upon which to plead under Texas law until an indictment or other satisfactory charging instrument has been returned.

In contrast, the procedure according to which the state of Texas provides for taking persons under arrest before an impartial magistrate at the earliest opportunity is plainly designed, not as a way of joining issue on criminal pleadings, but as a means of protecting essential rights of the suspect during the period following his arrest until the justice system decides whether to initiate a formal prosecution against him.[3] Code Crim. Proc. art. 15.17. The fact that a determination of probable cause is often made as a part of this procedure does not turn it into a criminal prosecution, any more than a determination of probable cause made by a justice of the peace issuing an arrest warrant in his living room or a grand jury investigation conducted in secret is a criminal prosecution. See Gerstein v. Pugh, 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975) ("[A]dversary safeguards are not essential for the probable cause determination required by the Fourth Amendment").

Our system contemplates a variety of instances in which public officials are obliged to decide whether there is reason to believe that some person has offended the penal laws of this state.[4] Sometimes people are detained *731 or made to give appearance bonds as a result of such decisions. But these people are not subjected to criminal prosecution

under the laws of Texas until an indictment, information, or other charging instrument is filed. With the exception of criminal prosecutions in justice and municipal courts, a warrant of arrest based on a complaint showing probable cause to believe that a suspect committed the offense alleged, although sufficient to authorize his detention, is not the kind of instrument upon which a conviction may be obtained.[5]

Criminal prosecution begins in Texas when the State officially announces that it will seek to convict a suspect of violating the state's criminal laws. It does not begin when the State merely detains or requires security for the appearance of a suspect pending completion of its investigation and decision whether to prosecute. See Dunn v. State, 696 S.W.2d 561, 565 (Tex.Crim.App.1985) (plurality opinion) ("The mere arrest and subsequent questioning of a person do not constitute a sufficient formalization of proceedings to trigger the requirement of counsel under the Sixth Amendment.")[6] Accordingly, I would hold that formal prosecution is not initiated in Texas for purposes of the Sixth Amendment right to counsel until the State has filed the kind of accusatory pleading upon which a conviction might lawfully be based.[7] In felonies, that pleading is an indictment, unless it has been waived. For misdemeanors punishable by imprisonment, it is a complaint and information. In justice and municipal courts, it may be a formal complaint alone. In my judgment, it is meaningless under Texas law to regard as formally adversarial any events which transpire before the filing of such an accusatory pleading. To the extent that they hold otherwise, I would overrule Nehman, Lucas, Janecka, and Barnhill.

I realize that many incidents in the investigative and administrative process prior to the inception of adversarial proceedings affect criminal suspects in important ways and that the assistance of counsel on such occasions might be genuinely helpful to them. But "our cases have never suggested that the purpose of the right to counsel is to provide a defendant with a preindictment private investigator[.]" Gouveia, 467 U.S. at 191, 104 S.Ct. at 2299. See also Moran v. Burbine, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Persons merely suspected of crimes simply are not covered by *732 the Sixth Amendment. Rather, the right to counsel there assured applies only after the State has formally "committed itself to prosecute." Kirby, 406 U.S. at 689, 92 S.Ct. at 1882.

This does not mean, of course, that the Sixth Amendment is altogether inapplicable at every nonjudicial or nonadversarial encounter between the accused and agents of the government. Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 60, 77 L.Ed. 158 (1932). Clearly, the right to counsel may be effective in circumstances which are neither judicial nor formally adversarial, such as lineups, police interrogations, and psychiatric

examinations. See Powell v Texas, 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989); Min v Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). But the Sixth Amendment right to counsel applies in such instances, and at all other critical stages of the criminal prosecution, whether adversarial or investigative, only when the encounter occurs after adversarial proceedings are formally begun in a court of law.[8]

With these additional remarks, I join the opinion of the Court.

NOTES

[1] We might speculate that this notation on the felony complaint represents no more than a recommendation from an assistant district attorney at in-take, "based on a printed form bail schedule utilized in criminal cases." Alberti v. Sheriff of Harris County, Texas, 406 F.Supp. 649, at 662 (S.D.Tex.1975). The record before us in this cause, however, does not affirmatively establish this.

[2] Because appellant was arrested without a warrant, his further detention without a finding of probable cause would violate the Fourth Amendment, under Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), as well as County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In any event, even a complaint in support of an arrest warrant, Article 15.04, V.A.C.C.P., will not justify continued detention absent a second determination of probable cause, as a matter of state law. See Ex parte Garcia, 547 S.W.2d 271 (Tex.Cr.App.1977). Why any probable cause determination was made at a PIA rather than at an examining trial, Article 16.01, V.A.C.C.P., is a question not raised by either party in the present cause. See text, post.

[3] Appellant equates the PIA with a so-called "Forty Eight Hour Hearing." See Ex parte Clear, 573 S.W.2d 224 (Tex.Cr.App.1978); Alberti v. Sheriff of Harris County, Texas, 406 F.Supp. 649 (S.D.Tex.1975). The "principal stated purpose" of such a hearing, we said in Clear, is "to review and set bonds and appoint attorneys in felony case complaints." 573 S.W.2d at 226. See also Sanders v. City of Houston, 543 F.Supp. 694 (S.D.Tex.1982), aff'd 741 F.2d 1379 (C.A.5 1984) (Fourth Amendment requires after warrantless arrest that accused be presented before a magistrate no later than 24 hours after initial detention for probable cause determination and setting of bail). It is odd, then, that the record does not affirmatively reflect that bail was set at the PIA, either on March 4 or on the reset on March 5.

In his brief in the court of appeals appellant relied heavily upon Alberti v. Sheriff of Harris County, supra, for the proposition he was entitled to counsel at the PIA. Alberti was a civil case,

however, testing the constitutionality of jail conditions in Harris County. The federal district court, inter alia, ordered the "Forty Eight Hour Hearing," to be conducted in the presence of counsel, as a means of assuring quick release of those jail inmates eligible for personal bond, to help reduce overcrowding. However, Alberti did not purport to require counsel under the Sixth Amendment, and to that extent it is inapposite to the present inquiry. Sanders is a Fourth Amendment case, and does not speak to the question of right to counsel.

[4] For purposes of Article I, § 10 of the Texas Constitution, this Court held in Forte v. State, 759 S.W.2d 128 (Tex.Cr.App.1988), that the right to counsel would inhere at any "critical stage," irrespective of whether adversary judicial proceedings had begun. Later the Court retreated somewhat from this position, declaring in McCambridge v. State, 778 S.W.2d 70, at 76 (Tex. Cr.App.1989), again for purposes of Article I, § 10 only, that no "critical stage" can occur "until formal charges are brought against a suspect." We do not today decide the question of right to counsel at a PIA under Article I, § 10. See p. 719, ante. In the Sixth Amendment context it is clear enough that even after the initiation of adversary judicial proceedings the right to counsel attaches only at a "critical stage." Forte v. State, 707 S.W.2d at 92.

[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[1] In Texas the traditional conceptual scope of a "criminal prosecution," once memorialized in statutes, is "the whole or any part of the procedure which the law provides for bringing offenders to justice;" the terms "criminal action" and "criminal accusation" are used in the same sense. See State v. Eaves, 800 S.W.2d 220, at 223, n. 11 (Tex.Cr.App.1990), and authorities cited therein. That issuing a warrant for arrest based upon a complaint pursuant to Articles 15.01, 15.03, 15.04 and 15.05, V.A.C.C.P., and thereafter carrying out duties imposed by Article 15.17, V.A.C.C.P., including informing accused of right to counsel and to an examining trial, are part of such procedure for "bringing offenders to justice" is self-evident. See Nehman v. State, 721 S.W.2d 319, 322 (Tex.Cr.App.1986).

While lacking a similar definition, the Federal Rules of Criminal Procedure to "govern the procedure in all criminal proceedings [in federal courts]," id., Rule 1, are intended to "provide for the just determination of every criminal proceeding," id., Rule 2. The first

procedure prescribed for "bringing offenders to justice" is to swear out a complaint upon which an arrest warrant or summons may issue "if there is probable cause to believe that an offense has been committed and that defendant has committed it[,]" id., Rules 3 and 4, followed by arrest of the accused. The second is an initial appearance before the magistrate during which the duties vary according to classification of the offense, but in any event implicate the right to counsel; the third procedure is a preliminary examination, unless waived. Rule 5(b) and (c); Rule 5.1 and Rule 58.

Thereafter, in each jurisdiction during the conduct of "criminal prosecutions" there are, of course, other pretrial procedures required or available; though called by similar names, the purpose and function of which are not necessarily the same.

All emphasis is mine throughout unless otherwise indicated.

[2] Rejecting any notion that the constitutional principle is limited to presence of counsel at trial, the Supreme Court has explained:

"... 'It is central to that principle that in addition to counsel's presence of trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.' United States v. Wade, supra, 388 U.S. at 226, 87 S.Ct. at 1932."

Coleman v. Alabama, 399 U.S. 1, at 9, 90 S.Ct. 1999, at 2003, 26 L.Ed.2d 387, at 396 (1970).

[3] An "arraignment" in one jurisdiction, there Iowa, may not be the same type of "proceeding" in another, for example, in Alabama. See Hamilton v. Alabama, 368 U.S. 52, 54, at n. 4, 82 S.Ct. 157, 159, at n. 4, 7 L.Ed.2d 114, at 116, n. 4 (1961) (arraignment has different consequences in various jurisdictions); see also Fed. Rule Crim.Pro. 10 and 11.

Accordingly, one must examine the cases with some care before likening another to our own particularly focussed pretrial "arraignment" required by Article 26.01 and prescribed in Articles 26.02, V.A.C.C.P. But compare "Forty Eight Hour Hearing" formerly prescribed in Harris County, described in Ex parte Clear, 573 S.W.2d 224, at 226-227 (Tex.Cr.App.1978), with an Article 15.17 proceeding before a magistrate elsewhere sometimes called an "arraignment," e.g., Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (passim).

[4] More particularly for near unanimous Supreme Court (two justices concurring with opinions). Justice Powe wrot .

"The Court of Appeals ... read Kirby as holding that evidence of corporeal identification conducted in the absence of defense counsel must be excluded only if the identification is made after the defendant is indicted. [emphasis in original; record cites omitted]. Such a reading cannot be squared with Kirby itself, which held that an accused's rights under Wade and Gilbert attach to identifications conducted 'at or after the initiation of adversary judicial criminal proceedings,' including proceedings instituted 'by way of formal charges [or] preliminary hearing.' [citations omitted]. The prosecution in this case was commenced under Illinois law when the victims' complaint was filed in court. [citation omitted]. The purpose of the preliminary hearing was to determine whether there was probable cause to bind petitioner over to the grand jury and to set bail. Petitioner had the right to oppose the prosecution at that hearing by moving to dismiss the charges and to suppress the evidence against him. [citation omitted]. He faced counsel for the State, who elicited the victim's identification, summarized the State's other evidence against petitioner, and urged that the State be given more time to marshal its evidence. It is plain that 'the government ha[d] committed itself to prosecute,' and that petitioner found 'himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' Kirby, supra, 406 U.S. at 689, 92 S.Ct., at 1882. The State candidly concedes that this preliminary hearing marked the 'initiation of adversary judicial criminal proceedings' against petitioner [record references omitted], and it could hardly contend otherwise. The Court of Appeals therefore erred in holding that petitioner's rights under Wade and Gilbert had not yet attached at the t me of the preliminary hearing."

Id., 434 U.S. at 228-229, 98 S.Ct., at 464-465, 54 L.Ed.2d, at 433-434.

[5] "There can be no doubt in the present case that judicial proceedings had been initiated against Williams ... A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge ..., and he had been committed by the judge to confinement in jail."

Id., 430 U.S. at 399, 97 S.Ct., at 1239-1240, 51 L.Ed.2d, at 436.

In United States v. Goveia, 467 U.S. 180, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984), the Supreme Court noted that subsequent cases had confirmed the view that the right to counsel attaches with "initiation of adversary proceedings," citing, e.g., Moore v. Illinois,

supra, 434 U.S. at 226-227 98 S.Ct., at 463-464, 54 L.Ed.2d, at 432-434 and Brewer v. Williams supra 430 U.S. a 3 399, 97 S.Ct., at 1239-1240, 51 L.Ed.2d at 435-437.

[6] The opinion of the Supreme Court actually decides two causes ultimately consolidated for purposes of appeal by the Supreme Court of Michigan: People v. Bladel and People v. Jackson, 421 Mich. 39, 365 N.W.2d 56 (1984).

The respective homicide offenses are not related, but each cause presents a common question, to-wit:

"Whether the rule of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2c 378 (1981) `applies to a defendant who has been formally charged with a crime and who has requested appointment of counsel at his arraignment.'"

The court below held that postarraignment confessions were improperly obtained in violation of the Sixth Amendment because both Bladel and Jackson "requested counsel during their arraignments, but were not afforded an opportunity to consult with counsel before the police initiated further interrogations." Michigan v. Jackson, supra, at 626, S.Ct., at 1406, L.Ed.2d, at 636, quoting from 421 Mich., at 67-68, 365 N.W.2d, at 69. The Supreme Court agreed with that holding. Ibid.

In Jackson's case, the Michigan Supreme Court points out that since he was arrested for a felony without a warrant, the arresting officers were required by a Michigan statute "to bring him before a magistrate for arraignment without unnecessary delay." 365 N.W.2d at 70. Bladel was first arrested, questioned and released without being charged; when investigating officers later obtained evidence tending to incriminate him, the officers caused him to be arrested in another state, and upon his waiving extradition and being brought back and questioned, Bladel was arraigned before a magistrate, during which he requested appointment of counsel.

In those contexts, the Supreme Court justified its application of Edwards v. Arizona to the Sixth Amendment right to counsel"at least after the initiation of formal charges," viz:

"Indeed, after a formal accusation has been madeand a person who had previously been just a `suspect' has become an `accused' within the meaning of the Sixth Amendmentthe constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation."

Id., 475 U.S. at 632, 106 S.Ct., at 1409, 89 L.Ed.2d, at 639. And after rejecting more opposing arguments on the subject, the Supreme Court concluded and held:

"... We conclude that the assertion [of right to counsel] is no less significant, and the need for additional safeguards is no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."

Id., 475 U.S. at 636, 106 S.Ct., at 1411, 89 L.Ed.2d, at 642.

[7] "[A]fter the initiation of adversary judicial proceedings, the Sixth Amendment provides a right to counsel at a 'critical stage' even where there is no interrogation and no Fifth Amendment applicability. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)...." Michigan v. Jackson, supra, 475 U.S. at 632, n. 5, 106 S.Ct., at 1409, n. 5, 89 L.Ed.2d, at 640, n. 5. Furthermore, the right to counsel at a "critical stage" does not depend on a request by the defendant. Id., at n. 6.

[1] All emphasis is supplied unless otherwise indicated.

[2] A PIA hearing pursuant to art. 15.17 is distinct from an examining trial under art. 16.01.

[3] The complaint in the instant case was filed March 3, 1990, the PIA hearing was held on March 4, and counsel was appointed to represent appellant on March 5.

[4] In Mallory v. State, 752 S.W.2d 566, 569-570 (Tex.Cr.App.1988), we recognized that Tex. R.App.P. 81(b)(2) is essentially the codification of the federal "harmless error" standard.

[5] See, n. 3, supra.

[6] Appellant contends harm invariably results from the failure to appoint counsel at the PIA hearing because unrepresented indigent defendants "lose their time, jobs, housing ... [and]... all those essentials that non-indigents with lawyers pursue as a matter of survival...." Appellant's Supplemental Brief and Response, pg. 33.

Initially, I note that the record does not indicate that appellant suffered these grievances. However, even if the record supported appellant's claims, the harm of which appellant complains is not the type of "harm" contemplated by the "harmless error" rule. The loss of

one's employment etc while most unfortunate, makes no contribution to a defendant's conviction or punishment. See Rule 81(b)(2). Consequently, the failure to appoint counsel in the instant case was harmless in a Rule 81(B)(2) context because the error made no contribution either to appellant's conviction or punishment.

[1] Relying mainly on Nehman, we recently opined in Fuller v. State that an accused who had been arrested and charged by warrant with a criminal offense was "probably right to insist that an effective waiver of counsel under the Sixth Amendment was essential to the admissibility of his ensuing statements." 829 S.W.2d 191, 205 (Tex.Crim.App.1992). But we did not finally resolve the issue in that case. Instead, we found that, even assuming appellant was entitled to counsel under the Sixth Amendment, he had expressly waived that right, and that there was "an adequate basis in the record for a conclusion that his waiver was constitutionally acceptable, not only under the Fifth Amendment, but for Sixth Amendment purposes as well." Id. Hence, although Fuller does not purport to be authoritative as to the kind of formal criminal charges which, for purposes of the Sixth Amendment, mark the inception of adversary judicial proceedings in Texas, the cases upon which it relied do.

[2] "There can be no doubt in the present case that judicial proceedings had been initiated against Williams before the start of the automobile ride from Davenport to Des Moines. A warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in the Davenport courtroom, and he had been committed by the court to confinement in jail." 430 U.S. 387, 399, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977).

[3] In other states, this procedure occasionally includes or is called an "arraignment." When it is, the United States Supreme Court sometimes conclusively considers it to mark the inception of adversary judicial proceedings because Kirby v. Illinois, 406 U.S. 632, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion) once speculated that judicial proceedings are often initiated by means of an "arraignment." Michigan v. Jackson, 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 1406 n. 3, 89 L.Ed.2d 631 (1986); Brewer, 430 U.S. at 399, 97 S.Ct. at 1240. In Texas, however, appearance before a magistrate to receive statutory warnings after arrest is neither denominated nor does it serve the function of an arraignment, and it is not considered to mark the inception of formal adversary proceedings. See Wyatt v. State, 566 S.W.2d 597, 600 (Tex.Crim. App.1978) (panel opinion); Tarpley v. Estelle, 703 F.2d 157, 162 (5th Cir.1983) cert. denied 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697; McGee v. Estelle, 625 F.2d 1206, 1209 (5th Cir.1980) cert. denied 449 U.S. 1089, 101 S.Ct. 883, 66 L.Ed.2d 817 (1931). See also Garcia v. State, 626 S.W.2d 46, 53 (Tex.Crim.App.1981); Thomas v. State, 605

# CHRIS DANIEL

## HARRIS COUNTY DISTRICT CLERK

Direct Dial Line:

*Justices!*
*Case printed out is*
*incomplete;*
*clerk below assumed*
*or decided a question*
*of Law —*
*"Jurisdiction."*

Ronald Dwayne Whitfield
7522 LaSalette
Houston, TX 77021

Memorandum response to correspondence received 7/31/15
Re: Cause No(s) 525468, 528856, 492674, 617718

Dear **Mr Whitfield**

☒ **Your motion/request was filed with the District Clerk and on 7/31/15 the Court:**

☒ **Took no action** ☐ **Denied your Motion/Request** ☐ **Granted your motion/request**

☐ **Our records reflect your jail time credit to be:**

☐ **Contact TDC records for further information.**

☐ **Requests for certified copies:**

☐ Please include full name, date of birth, and/or cause number.

☐ Copies must be ordered by document name for correspondence to determine how many pages, to be able to quote a price. The fee for certified or uncertified copies is $1.00 per page. All requests must include a self-addressed, stamped envelope. If the cause number is not known, there will be a record search fee of $5.00.

☒ **Other: These courts no longer have jurisdiction over these cases. Please consult an attorney** *without a judgment being rendered and entered? Judge Teague speak, please; what a "rather unremarkable proposition on its face and yet disturbing in its implications." Ex Parte Throng, ╖ ___ S.W. 2d ___ ( Tex. Crim. App )*

**CHRIS DANIEL, District Clerk**

By: T. Jones
Clerk in the **337th** District Court

CAUSE NUMBERS

492674, 525468, 528856, 557164 and
617718

STATE OF TEXAS

V.

Prophet Ronald Dwayne Whitfield

174th

337th and

351st

IN THE

DISTRICT COURT
OF HARRIS COUNTY, TEXAS

motion FOR HEARING AND

Defendant'S AND
STATE'S MOTIONS FOR
Tex. R. APP. Proc., Rule
23, FOR JUDGMENT
NUNC PRO TUNC
AND ENTRY IN THE MINUNTES
THEREFOR

TO THE JUDGE OF SAID COURT!
TO ACLU!

To U.S. Congress:

To U.S. Congresswoman Sheila Jackson-Lee:

To American National and local News media:

To U.S. President and Vice-President

To President - and Vice-President Elect:

To Gov. State of Texas:

To All State of Texas Senators
and Representatives:

To Texas Attorney General

To All Watchdog Groups:


Prophet Ronald Dwayne
Whitfield, so-called Defendant,
move for New Rule* Judgment
Nunc Pro Tun in the cases
referenced above and then
for entry thereof into
the minutes of the court.

---

*Current Rules of Texas
Rules Appellate Procedure may now be applicable.

Judges of said Courts, although this ~~that~~ day our Prophet has caused appellate court clerks of our First and fourteenth court of appeals to file ( a Practioner files himself/herself nothing, the clerk _does_ ) a petition for writ of mandamus, swift action by you judges will render that proceeding "moot."

In support of His motion, our Prophet incorporates herein Jones v. State, 795 S.W.2d 199 and Wilson v. State, 677 S.W.2d 518 as his initial and final ARGUMENTS.

Those cases cite Moore v. State, 245 S.W. 2d 491. See, also, Lanier v. State, 268 S.W. 2d 129.

WATCH THIS

"[T]he 'Nunc Pro Tunc order' reflects the following: 'The Court further finds that a correct judgment and ~~sentence~~ was entered by the trial court on December 19, 1974, but ~~was was~~ incorrectly entered ~~on~~ in the minutes of the court...' To read this portion of the order literally would allow for an unwarranted contradiction

to take place: we do not do so because we find that it was obvious that the first "entered" should have instead been "rendered."

Read the opinion on; it goes on to explain the __legal__ definition of what a judgment is and cites Moore v. State, 245 S.W. 2d 491.

watch the opinion in moore v. state

WATCH THIS MOORE v. STATE CONTRADICT

ITSELF in using "entered" for "rendered"; one must slow down or else too make some unwanted contradiction.

"Appellant, for the first time by his motion for rehearing [waited to see what our court would do, and having acted to rule against him, now] insists no final judgment has been entered in this case [like our Prophet Ronald does here] and that, for this reason, the appeal [in Whitfield v. State, 01-92-00617-CR] should be dismissed.

"The transcript [clerk's record] contains [as here] what, upon its face, purports to be a judgment of the court [below us] showing th

appellant [ here also showing that our LAST Prophet ] was duly tried and convicted [ of a violation of Texas Penal code, and not convicted for being in love with our one and only 'REAL' God ] ~~was duly~~ by a jury [ and in the other matters by his very own pleas of guilty ], upon which the trial court [ i.e., its Judges ] entered [ sic; the writer mmeant, 'rendered' ] judgment. As it appears in the transcript, the judgment does not show [ as here in Prophets' 'legal matters' ] to have been entered in the

minutes of the Court.

"Accompanying the motion for rehearing [ like He does in the appellate court now ] is the certificate [ but the court already has the certified record ] of the county [ here, the DBTRZt ] clerk certifying that the judgment had not been entered in the minutes of the court but, by inadvertence [ as here ], had been omitted from such record.

"It is apparent, therefore, that a judgment has not been entered of record in

the minutes of the court in this case. 'Entered of record,' as applied to a judgment in a <u>criminal</u> case, means 'entered in the minutes of the court.' The case of Ellis v. State, 140 Tex. Cr. R. 339, 145 S.W. 2d 176, appears to be here controlling; it was there held [ as it would be here held ] that a [ mere ] docket entry in a misdemeanor case [ and one case here too is a misdemeanor and it ] did not <u>constitute</u> a judgment entered of record.

"Appellant [ and our Last Prophet'S ] motion for rehearing [ and for judgment Nunc Pro tunc ] is granted; the [ prior ] opinion theretofore <u>rendered</u> in this case is withdrawn, and the appeal is now dismissed."

" Opinion approved by the Court."[4]

## CONCLUSION

BUt keep in mind, a <u>correct</u> Jones, supra, held that a judgment may be now "rendered" nunc pro tunc if,

in fact, an judgment previously rendered had been entered. But if no judgment had been rendered at all, then no judgment may ever be "rendered" nunc pro tunc. The current appellate rules, therefore, but were not in effect at time of these five (5) cases, mistakenly uses "render" for "enter." Thus the rules meant a judgment may be "entered" nunc pro tunc.

Here, the only remedy is to grant a new trial, under the former rules. Then Prophet ~~Russ~~

/s/ Prophet Russ

Dated July 31 2015

Likewise, although there are judgments circulating (like money circulates) showing higher courts, President of U.S. gov., ect. that our Last Prophet had been convicted of offenses in the State of Texas, the Clerk of the courts from which they purport to be _KEPT_, has no "record" of them entered in the minutes.

Thus they are not judgments.

# AFFIDAVIT

I, Prophet Ronald Dwayne Whitfield, declare the above and foregoing is true and correct and not misleading

(S) Prophet

dated July 31, 2015

If a judge be found with twenty (20) twenty-(20) dollar bills in U.S. currency and government have no <u>record</u> of the serial numbers thereon those $20 bills, judge could be prosecuted for being in <u>possession</u> of counterfeit money.

of a writ of mandamus 32 (an order to Respondents to respond to the petition itself) and for the ~~granting relief~~ thereunder it, as well as the civil cases on appeal, which, this morning, I discovered will have to be dismissed for want of jurisdiction.

~~With kindest~~

Justice of First Court of Appeals, 01-92-00617-CR motions for reconsideration ~~and~~ en banc and for rehearing include Moore v. State 245 S.w.2d 491 and Lanier v. State 268 S.w.2d 129 (1954).

Since "No judgment appears to have been entered in the minutes, in the absence of which the appeal must be dismissed." see Moore V. State, 245 S.W.2d 491

Any filing of <u>another</u> notice of appeal would have to be dismissed, not as untimely, but because "no final judgment has been entered in this case."

clerks, Please file, set and Present same to the courts for their Justices to adjudicate.

(S) Prophet Russ